MORRISON v. MOREY *et al., Plaintiffs in Error.*

Division One, December 8, 1898.

1. **Levee District**: PUBLIC CORPORATION. A levee district, organized under chapter 101, Revised Statutes 1889, is a political subdivision of the State, which the State, under its police powers has the right to create, and as such subdivision it has authority to exercise prescribed functions of government in the district.

Morrison v. Morey.

2. **Police Power:**  EXTENT OF.  The police power of the State extends to all kinds of restraints and burdens, in order to secure the general comfort, health and prosperity of the State, and this includes the right to enact suitable regulations looking to the accomplishment of a public purpose and designed for the promotion of public interests.

3. ——: ——:  APPLICABLE TO LEVEE CONSTRUCTION.  The police power of the State is broad enough to authorize the law permitting the organization, under prescribed regulations, of levee districts, for the construction of levees to prevent the overflow of agricultural lands by the Mississippi river.

4. ——: ——: ——:  ADDITIONAL VALUE TO LAND:  HEALTH.  Such a law would be unconstitutional if its only purpose was to improve the value of the lands of the persons within the levee district. But courts will take judicial notice that such overflows are followed by disease, and such law may therefore be upheld as conducive to the health of the people.

5. **Levees:** TAX: ASSESSMENT OF BENEFITS:  The money to be raised from the land owners of a levee district, to be used in the construction of a levee under chapter 101, Revised Statutes 1889, is not a tax, but an assessment of benefits, and as such is constitutional, although as a tax it might be unconstitutional, both as exceeding the maximum rate of taxation permitted by the Constitution, and because not uniform taxation.  Such assessment stands on the same bases as costs for the abatement of nuisances, for the construction of sewers and for the improvements of streets, which may be assessed against the property benefited.

6. ——: ——: ——: ——:  ACCORDING TO VALUE OF LANDS.  Nor is such law affected by the fact that the costs of such benefits are taxed upon the total value of the lands in the district, instead of in proportion to the benefit conferred.

7. ——: ——: ——: ——:  BY INSTALMENTS:  BONDS.  The legislature has the right to determine that the assessments for such benefits shall be paid by instalments, and to authorize the issuance of bonds secured by the assessments and payable exclusively out of the proceeds thereof.

*Error to Ste. Genevieve Circuit Court.*—HON. JAMES D. Fox, Judge.

REVERSED AND REMANDED.

*T. B. Whitledge* and *Edward A. Rozier* for plaintiffs in error.

(1)   Quasi corporations (subdivision of the State) are but instrumentalities of the State, and the State incorporates them that it may more effectively discharge its duty; they are political or civil divisions of the State created by general law, to aid the administration of government.   They are purely auxiliaries of the State  Their powers relate to subjects purely of State concern.   Dillon on Mun. Corp., sec. 25; Beach on Mun. Corp., sec. 4.   (2) The levee district is not a "political corporation or subdivision" of the State as defined by section 12 of article X of the Constitution. Dillon on Mun. Corp. [3 Ed.], secs. 20, 22, 23, 56 and 57; *Cypress Pond Co. v. Hooper*, 2 Mete. 350; *Heller v. Stremmel*, 52 Mo. 309; *State v. Leffingwell*, 54 Mo. 458; *Ten Eyck v. Canal Co.*, 3 Harr. 200; *Regents of University v. Williams*, 9 Gill & John's (Md.) 365.   (3) It is rather a private corporation, for it is created for the benefit of private property.   *Ten Eyck v. Canal Co.*, 3 Harr. 200; *Egyptian Levee Co. v. Hardin*, 27 Mo. 495.   (4) The indebtedness herein sought to be created by the issuing of the bonds is not such indebtedness as is prohibited by section 12 of article X of the Constitution, it being for the assessment of benefits on the lands benefited within said district by the construction of the levee.   *Farrar v. St. Louis*, 80 Mo. 379; *Egyptian Levee Co. v. Hardin*, 27 Mo. 495; *Garret v. St. Louis*, 25 Mo. 505; *Newley v. Platte Co.*, 25 Mo. 259; *Lockwood v. St. Louis*, 24 Mo. 20; *Sheehan v. Hospital*, 50 Mo. 155; *St. Joseph v. Owen*, 110 Mo. 445; *Lamar v. City of Lamar*, 128 Mo. 188; *City of Clinton v. Henry Co.*, 115 Mo. 557; *Roosvelt H. Co. v. Mayor*, 84 N. Y. 108; *Deal v. Mississippi Co.*, 107 Mo. 464;

Cooley on Const. Lim., sec. 479. (5) The various provisions of the State Constitution regulating and limiting the mode of taxation do not apply to local assessments to pay for local improvements. *Farrar v. St. Louis*, 80 Mo. 379; *City of Independence v. Gates*, 110 Mo. 374; *Lockwood v. St. Louis*, 24 Mo. 20; *Newley v. Platte Co.*, 25 Mo. 505; *Palmyra v. Morton*, 25 Mo. 593; *Egyptian Levee Co. v. Hardin*, 27 Mo. 496; *St. Louis v. Clements*, 36 Mo. 467; *Uhrig v. St. Louis*, 44 Mo. 458; *State ex rel. v. St. Louis*, 62 Mo. 244; *Adams v. Lindell*, 72 Mo. 198; *St. Louis v. Spiegel*, 75 Mo. 145. (6) Provisions of the Constitution relating to revenue, uniformity and equality of taxes make no change in the law as to assessments for local improvements. *Adams v. Lindell*, 72 Mo. 198. They are compensations for benefits received or to be received. *Hassen v. Rochester*, 67 N. Y. 530; *McGonnigle v. Alleghany*, 44 Pa. 118; *Litchfield v. Vernon*, 41 N. Y. 123; *Wright v. Cushing*, 9 Cush. 233; *Lockwood v. St. Louis*, 24 Mo. 20; *Kansas City v. Holden*, 107 Mo. 305. (7) The courts recognize an important distinction between "taxation" for general purposes of revenue and "assessments" for benefits, as used in the Constitution and Statutes. 25 Am. and Eng. Ency. of Law, 494; *Munson v. Levee District*, 43 La. Ann. 15; *Bridgeport v. Railroad*, 36 Conn. 262; *Macon v. Patty*, 57 Miss. 86; *Taylor v. Palmer*, 31 Cal. 254; *McGonnigle v. Alleghany*, 44 Pa. 121; *Green v. Ward*, 82 Va. 327; *People v. Austin*, 47 Cal. 353; *Hayden v. Atlanta*, 70 Ga. 817; *Davis v. New Orleans*, 40 La. Ann. 806; *Brooks v. Baltimore*, 48 Md. 265. (8) The words "in any manner or for any purpose," in section 12 of article X of the Constitution, apply only to general taxation, where the indebtedness is created for public purposes. *City of Clinton v. Henry Co.*, 115 Mo. 557; *Sheehan v. Hospital*, 50 Mo. 155; *Lockwood v. St.*

*Louis*, 24 Mo. 20; *In re New York*, 11 Johns, 80; *Northern Liberties v. St. John's Church*, 13 Pa. 107; *Cowley v. Copley*, 2 La. Ann. 329.

*Ralph E. Sprigg* and *Charles E. Killian* for defendant in error.

The proposed issue of bonds to an amount in excess of the limit provided by section 12 of article X of the Constitution is unconstitutional: *First.* Because the district is a political corporation and a subdivision of the State.    It is a corporation because it has all the attributes and powers of a corporation.  Bouvier's Law Dic., title Corporation; Beach on Public Corp., sec. 1. It is a political corporation. *Elmore v. Drainage Com.*, 135 Ill. 269;  1 Beach on Public Corp. [Ed. 1893], secs. 2, 3, 4 and 262;   *State ex rel. v. Stewart*, 74 Wis. 620; *Wilton v. Trustees*, 27 N. E. Rep. 203;  *People ex rel. v. Nibbe*, 37 N. E. Rep. 217; *Johnson v. San. Dist.*, 45 N. E. Rep. 213; *Nugent v. Board of Levee Com.*, 58 Miss. 197. It is a political subdivision of the State. 1 Beach on Pub. Corp. [Ed. 1893], sec. 3;  *State ex rel. v. Leffingwell*, 54 Mo. 475; *Elmore v. Drainage Com.*, 135 Ill. 269; *Winspear v. Dist. Town of Holman*, 37 Iowa, 542; *Haurayausen v. Improv. Com.*, 45 N. J. L. 113.  *First.* The authority of the legislature to provide for the compulsory formation of drainage and levee districts is based solely on its power to enact police regulations. The State can not compel its citizens to become members of a private corporation organized for strictly private purposes, nor can the State compel the owner of the property to improve it unless public considerations are involved.  *Elmore v. Drainage Com.*, 135 Ill. 269; *Duke v. O'Bryan*, 39 S. W. Rep. 444; R. S. 1889, secs. 6669 to 6682; acts 1885, p. 217.  *Second.*  Because the act itself is unconstitutional in that it does

not provide for a day in court for one whose lands will not be benefited by the proposed work, and are wrongfully included in the district. *Moulton v. Parks*, 64 Cal. 166; *Bradley v. Fallbrook Irrigation District*, 68 Fed. Rep. 948. *Third.* In that it does not provide for the payment of damages to lands not included in the district, but damaged by its works. And in that the method of assessing the taxes wherewith to pay for the work is not uniform upon persons or property, of the same class, within the district, nor is it based upon benefits to the property benefited, but it is unreasonable and unjust and is the taking of private property for a public use without just compensation. And because it is unconstitutional as a local assessment, the method of collecting the taxes making it a personal charge against the person to whom the property is assessed. *Asberry v. City of Roanoke*, 22 S. E. Rep. 360.

MARSHALL, J.—This is a proceeding in equity to enjoin the defendants, as directors of Levee District No. 1, in Perry county, from proceeding under chapter 101, Revised Statutes of Missouri, to construct a levee in said district. The case is here upon petition, answer, and demurrer to the answer. The circuit court sustained the demurrer, defendants submitted to judgment on the answer, and brought the case to this court on writ of error.

The petition is as follows:

"Plaintiff states the defendants, Anson H. Morey, A. B. Parks and Emanuel J. Smith, are the acting directors of a certain so-called Levee District, attempted to be organized under an order of the county court of Perry county, Missouri, made on the 6th day of February, 1893, under the supposed authority of chapter

101 of the Revised Statutes of Missouri, in which said
order said so-called levee district, is designated as
Levee District No. 1, lying in Perry county, Missouri,
and the boundaries thereof designated as follows,
to wit: beginning at a point on the old Clearyville and
Perryville road, at the base of the bluff; thence east-
wardly along the said road to the Mississippi river;
thence up along the bank of said river to the mouth of
the House Island Slough; thence up along the south
side of said slough to the Mississippi river; thence up
along the shore of said river on the line of the present
levee to the base of the bluff at a point where the said
levee ends and joins the said bluff upon the land of
Caleb P. Clark; thence down the base of said bluff to
the place of beginning, all the land embraced in the
said described district, lying north of the old Cleary-
ville and Perryville road, in Bois Brule Bottom in Perry
county, Missouri. That defendants, as such board of
directors, are asserting jurisdiction, authority and con-
trol over all the real estate within said supposed levee
district, and are claiming all the rights, privileges and
immunities attempted to be conferred by the provisions
of said chapter 101 of the Revised Statutes of Mis-
souri. That the total value of all the lands and town
lots embraced within the boundaries of said supposed
levee district, as assessed for state and county purposes,
is $88,227, and that the total value of all said lands
and town lots, by reason of the work proposed by said
supposed levee district, as returned by the assessor of
the said Perry county, is $140,157. That the value of
all the lands and town lots in said supposed levee dis-
trict, as ascertained by the assessment next before the
last assessment for State and county purposes, previous
to the incurring of said indebtedness, was $88,227.
That the plaintiff is the owner of the following

described land, lying wholly in said supposed levee district of the assessed values set opposite thereto, to wit:

| Description of Lands. | Assessed values. Without work. | With work. |
|---|---|---|
| 103.68 a, fractional section No. 4, township 36, range 11.............. ............... | $200 | $715 |
| 138.81 a, N. E. fractional section No. 9, township 36, range 11... ........... ........ | 200 | 865 |
| 75.00 a, lot No. 4, of survey No. 147, township 37, range 11......... ............. | 800 | 1,170 |
| 640.00 a, survey No. 1879, township 36, range 11 ...................... ....... | 4,000 | 7,200 |
| 127.29 a, part lot 1 of survey 1881, townships 36 and 37, range 11.................... | 1,200 | 1,835 |

"Plaintiff further states that the defendants, asserting themselves to be the board of directors of a legally constituted levee district, and affirming the legality and constitutionality of said Chapter 101 of the Revised Statutes of Missouri, and the legal formation of said levee district thereunder, and that they are a legally constituted board of directors, with all the powers attempted to be conferred by said Chapter 101, have made contracts for the levying and draining of all the lands in the said supposed levee district and have contracted to pay therefor the sum of $21,000, and have ordered the issue of the bonds of said supposed levee district to the amount of the said sum of $21,000 to be used in the payment of said contract, and are now offering the same for sale upon the market. That said bonds are to be made and constituted a lien, incumbrance and mortgage upon all the real estate contained within the metes and bounds of said supposed levee district. Plaintiff states that the said supposed levee district has no money in its treasury, and has no source of revenue other than the supposed power of taxation attempted to be conferred by said Chapter 101 of the Revised Statutes of Missouri. Plaintiff states that the said sum of $21,000 is greatly

in excess of the amount of income and revenue provided by the said supposed levee district for either the present or ensuing year, and exceeds five per cent of the value of the taxable property in said supposed levee district, as ascertained by the assessment next before the last assessment for State and county purposes previous to the incurring of said indebtedness, and that the creation of a debt to that amount by said supposed levee district is unconstitutional, being in contravention of section 12 of article X of the Constitution of the State of Missouri. That the said order of the county court of Perry county, attempting to establish said levee district, is void for the following reasons:

"*First.* That said Chapter 101 of the Revised Statutes of Missouri is unconstitutional in that it authorizes the levy of a tax in excess of the limit allowed by the Constitution of the State of Missouri.

"*Second.* That said levee district does not include all contiguous bodies of land lying in the said county of Perry, subject to overflow or inundation from the same crevasses, bayous, draws or outflows from rivers, and in the same direction, and which can be protected by the same levee system of levees, but in fact include less than one half of one contiguous body of land that can be so protected, and is subject to overflow from the same streams and in the same direction.

"*Third.* That no notice of the intention to apply for the formation of said levee district was given.

"*Fourth.* That said chapter 101 of the Revised Statutes of Missouri is unconstitutional in that it authorizes the taking of private property for a public use without just compensation, and in that it provides for the levy of a tax that is not uniform, the lands in said district being taxed upon their total value and not in proportion to the benefit conferred by the proposed

works, and that the lands in no way benefited by said work are thereby taxed and taxed higher than the lands deriving the greatest benefit from said proposed work.

"That the said board of directors have no authority to issue the said bonds for the reason that they have not complied with the provisions of section 6681 of the Revised Statutes of Missouri, and that the rate per cent proposed to be levied by them has not been approved by all the land owners of said district as provided by section 6682a of said Revised Statutes of Missouri. That said directors are proceeding to issue said bonds and incur said indebtedness without the assent of two thirds of the voters of said district voting at an election to be held for that purpose.

"Plaintiff further states that all the acts of defendants and all others and of the said county court of Perry county, Missouri, in and about the formation of said levee district, and in and about the issuance of said bonds and in and about the levy of a tax on the lands in said district for the purpose of paying the interest and principal of said bonds, are illegal, irregular and void.

"Plaintiff further states that the issue of said bonds and the making of them an apparent lien upon all the lands within the metes and bounds of said supposed levee district, will constitute a cloud upon the title of plaintiff to his said lands situated therein, and a cloud upon the title of all others similarly situated to their lands situated therein, and will work a great hardship to plaintiff and all others similarly situated and they and he will be in great danger of having their said lands confiscated thereby, and that said lands will thereby be deprived of their market value and the owners thereof will be unable to dispose of them, to

the irreparable damage of plaintiff and all others similarly situated.

"That said bonds being illegal and void, their issuance and sale will entail endless and vexatious litigation upon plaintiff and other owners of land within the said supposed levee district, and cause irreparable damages to them.

"Wherefore plaintiff prays that defendants and all others acting or pretending to act by virtue of the supposed organization of said levee district be restrained and enjoined from proceeding any further in the matter of the issue of said bonds or any sale thereof, and from the making of any contract whatever by which it is sought in any way to bind the owners of any of the lands embraced within the boundaries of said district, and from levying or attempting to levy any tax or charge upon the lands or any part thereof embraced within the limits of said district; and for such other and further relief as to the court may appear just and proper in the premises, as in duty bound will ever pray."

The defendants answered as follows:

"Now comes the above named defendants and admit that the defendants are the directors of Levee District No. One, lying in Perry county, Missouri.

"Admit that plaintiff is the owner of the lands described in this petition; and that said lands are within the metes and bounds of Levee District No. One, lying in Perry county, Missouri; and that the metes and bounds of said levee district are as set out in plaintiff's petition.

"Admit that the total value of lands and town lots in said levee district as assessed for State and county purposes at the assessment next before the last assessment was $88,227; and that the total value of said lands and town lots by reason of the proposed work is the

sum of $140,157 as returned by the assessor of said Perry county.

"Admit making the contracts for the levying and draining of said levee district aggregating the sum of $21,000; and admit that the issue of bonds in the said sum was in payment therefor.

"Admit that it has practically no money in its treasury and that its only source of income is the right of taxation under said chapter 101.

"Admit that A. B. Parks has been duly appointed by the County Court of said Perry county to succeed said George Esselman.

"Admit that said sum is in excess of the revenue now provided for the present year, or the ensuing year, but state that said bonds are to be paid within one year from the time of the payment of the last instalment to be paid under said contracts.

"Admit that said bonds will be a lien on the lands in said levee district.

"But defendants deny that said Chapter 101 is unconstitutional and denies that it is in conflict with Section 12 of Article X of the Constitution of Missouri.

"And deny that said levee district is not composed of all of the contiguous body or bodies of land as near as may be that could be included within the metes and bounds of said Levee District Number One, as to be drained by one system of levees.

"And deny that no notice of the intention to apply for the formation of said levee district was given.

"But defendants assert and state that E. J. Smith, Charles McClure, George Esselman, A. H. Morley, John Clary, A. B. Parks, Sebastian Oliver, J. P. Mc-Bridge, Charles Williams, John Tlapek, Leon Bogy, Patrick Williams, I. McClure, John Lorenz, A. O. Moore, James E. McCabe, James M. McCabe, Pius Cissell, Fred Estes, Harvey Neville, and others, being

owners of contiguous bodies of land that were subject to overflows or inundations of the Mississippi river, a river bordering upon this State, and being desirous of availing themselves of the benefits and privileges conferred by chapter 101 of the Revised Statutes of Missouri, and to have their said lands placed within a levee district lying wholly in Perry county, that should be composed as near as possible of all lands subject to inundation or overflow from the same crevasses, bayous, draws or overflows of the said Mississippi river and in the same direction and which could be protected by the same levee or the same system of levees, gave notice by publication in the Perryville Sun, a newspaper published weekly in the city of Perryville in said county of Perry, in its issue of January 6, 1893, January 13, 1893, January 20, 1893, and January 27, 1893, being the four successive weekly issues of said Perryville Sun, immediately preceding the regular February term, 1893, of the county court of said Perry county, that said parties would present a petition to the county court of said Perry county at its regular February term to be begun and holden in the city of Perryville, on the first Monday of February, being the sixth day of February, 1893, asking said court to organize into a levee district all of the lands of said county of Perry subject to overflow or inundation by the waters of the Mississippi river or by any crevasses, bayous, draws or outflows running in the same direction with said river; and at said regular February term, 1893, of said county court said parties presented said petition asking for the formation of their lands or all other lands in said county subject to overflow or inundation as aforesaid into a levee district, which said petition was heard by said court and evidence relating thereto; and the court having fully considered said petition made an order of record whereby it ordered and adjudged that all lands and territory con-

tained within the metes and bounds, as set out in plaintiff's petition herein, be formed into a levee district to be known as Levee District No. 1, lying and situate within Perry county, Missouri; and appointed A. H. Morey, Emanuel J. Smith and George Esselman, all of whom were land owners within said levee district and were residents thereof, as directors of such levee district, the said George Esselman being appointed for a term of one year, the said E. J. Smith for a term of two years, and A. H. Morey for a term of three years; that said Morey and Esselman before entering upon the discharge of their duties as such directors took and subscribed the oath prescribed by the Constitution of this State, to faithfully, honestly and impartially discharge the duties of such position as directors of said levee district; which said oaths were filed in the office of the county clerk of said county of Perry. Said directors after their appointment as aforesaid and after qualifying held a meeting in said levee district at the village of Clearyville on the thirteenth day of February, 1893, at which all three of said directors were present, and organized by the election of A. H. Morey as president, E. J. Smith as vice-president and George Esselman as secretary.

"Defendants further state that the board of directors of said Levee District No. 1 lying in Perry county, Missouri, proceeded to determine what work was necessary to be done, and what levees were to be erected in order to protect said district from overflows or inundations by the waters of the Mississippi river; and thereupon found it necessary to have accurate surveys, maps and profiles made of the levees and other works necessary to be done and thereupon employed a competent engineer, who in compliance with the directions of said board of directors, made an accurate survey of all of the levees and other works necessary to be done,

together with maps and profiles thereof, with estimates and calculations of the costs of such work, and who also made a written report thereof showing the amount, character and kind of work necessary to be done, its exact location and probable cost, and with all plans and specifications relating thereto, all of which was by him delivered to said board of directors.

"Defendants further state that said county court of Perry county, after the formation and organization of said Levee District No. 1, ordered and caused the assessor of Perry county to make an assessment of the lands lying in said levee district for the year 1893, being the first annual assessment after the formation of said levee district, which said assessment was to be returned in a separate assessment book made out according to law. Whereupon said assessor in making the annual assessments of said Perry county for the year 1893, under the general revenue laws of the State, assessed the value of all the lands in said levee district subject to overflow or inundation from rivers and which would be benefited by the work proposed to be done in said levee district according to the plans thereof as hereinbefore set out, having reference to the value of said lands without said proposed work and also assessed the value of said lands as improved by such proposed work, all of which was entered by said assessor in a separate book provided for such purpose and which book was by him filed in the office of the clerk of the county court of said Perry county, and a fair copy thereof was made by said assessor and certified by him and delivered to A. H. Morey, the president of the board of directors of said levee district.

"Defendants further state that said board of directors, upon the filing with the president of such board of said copy of assessment book, called a meeting of the land owners of said levee district to be held

at the school house in the village of Clearyville in said levee district, which was a place convenient to some part of the contemplated work, on the 12th day of August, 1893, at ten o'clock A. M. of that day, and gave notice of the time and place of said meeting and the purpose thereof by publication in the Perry County Sun and Perry County Republican, two newspapers published in said county of Perry for a term of thirty days prior to said meeting, the last insertion in both of said papers being within ten days of said meeting, and by setting up ten written posters giving notice of the time and place of said meeting and the purpose thereof, which were set up in ten public places in said county for at least thirty days before said meeting.

"Defendants further state that at said meeting held at said school house, in the village of Claryville, in said district, on said 12th day of August, 1893, said board of directors submitted the reports, specifications, surveys, maps, profiles and estimates, made by said competent engineer as aforesaid and also submitted said assessments made by the county assessor of said Perry County to said meeting for action, and required the owners of the lands within said levee district and the holders of any liens thereon, to show cause why said lands should not be assessed with their. proportional part of the work proposed to be done. Said directors also submitted to said meeting the written reports and estimates of said engineer, together with an estimate of the probable cost of said work and the probable rate per centum thereof on the valuation as increased by the said work, as shown by said assessment book, as will be necessary to pay for said work.    All of which said matters were fully considered by such meeting, and the land owners who were present in person, or by agent, or by attorney, proceeded to vote upon the proposition, whether such work shall

be done or not, and the rate per centum to be levied therefor, and the vote of those so present and entitled to vote showed that ninety of such land owners were in favor of having such work done, while only eighteen of such land owners were against the doing of such work, wherefore, it was decided by said meeting to have such work done according to the terms and estimates heretofore submitted; and authority was then and there given by said meeting to said board of directors to let the contracts for the building of the levees as shown by the plans and specifications therefor.

"Defendants further state that the board of directors of said district by virtue and authority of the action taken by said meeting of the land owners in said district as aforesaid, first having obtained all necessary rights of way for the construction of such levees according to said plans and specifications, have let the contracts for the building of said levees as aforesaid to the lowest and best bidder therefor in the price and sum of $21,000; that they have levied a rate per centum in payment thereof to be paid in annual instalments; and that they have issued bonds of said levee district amounting to the sum of $21,000, which said bonds they are now offering for sale.

"Wherefore the defendants assert that they are the board of directors of a legally constituted levee district, organized according to law; that the bonds which they are about to sell have been issued by authority of such levee district so constituted and their issue is expressly authorized by law; and that every step and proceeding required by law to authorize the issue of such bonds has been fully complied with, and that said bonds are in every respect legal, proper and necessary, and not running longer than the last instalment or payment to be made on account of the building of such levees, all of which these defendants

are ready to verify, and having fully answered plaintiff's petition they ask to go hence without day.''

The plaintiffs demurred to the answer on the ground that it did not state facts sufficient to constitute a defense to plaintiff's petition.

The averments of the answer as to the steps that have been taken afford a fair index to the provisions of chapter 101, Revised Statutes of Missouri, so far as they are necessary to the determination of this case, except as to the issuance of the bonds and the payment of the assessments in instalments, and that is permitted by the Act of 1893 (Acts 1893, p. 199).

## I.

The first question, therefore, is whether chapter 101 is unconstitutional because it authorizes the levy of a tax in excess of the limit allowed by section 12 of article X of the Constitution of this State. That section provides: ''No county, city, town, township, school district or other political corporation or subdivision of the State, shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; nor in cases requiring such assent, shall indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for state and county purposes, previous to incurring such indebtedness,'' etc.

Plaintiff contends that the levee district constitutes a political subdivision of the State, and hence is amenable to the provisions of this constitutional limitation, while defendants contend that the district is a

mere private corporation, and hence is exempt from those restrictions.

It is manifest that the levee district is not a private corporation. A private corporation is an aggregation of individuals who have *voluntarily* associated themselves together. Here the levee district is constituted by the county court laying out the district, and a majority vote of the land owners in the district may order the work to be done. While the law requires a notice to be given of the intention to apply to the county court for the formation of the district, it leaves the power to form the district in the court. The land owners can defeat the whole scheme by refusing, by a majority vote, to order the work done and thus nullify the action of the county court in forming the district. Still the minority are drawn into it involuntarily, and this could not be done if it was a private corporation.

It is a public political subdivision of the State which the State has the power to create, under its police powers, and as such subdivision it exercises the prescribed functions of government in the district. *People v. Reclamation District*, 53 Cal. 346; *Hoke v. Perdue*, 62 Cal. 545; *Elmore v. Drainage Com'rs.*, 135 Ills. 269; *State ex rel. Baltzell v. Stewart*, 74 Wis. 620; *Nugent v. Levee Com'rs.*, 58 Miss. 197; *Com'rs of Drainage District v. Griffin*, 134 Ills. l. c. 338; *Dean v. Davis*, 51 Cal. 406.

The case of *Nugent v. Levee Com'rs.*, is in nearly all of its essential elements like the case at bar, and there is a striking similarity between the act construed in that case and chapter 101, Revised Statutes 1889, and the amendment thereof in 1893.

It is fundamentally true that the State has no power to compel an owner to improve his land. Cooley's Constitutional Limitations [6 Ed.], p. 475. The case of *Gaines v. Buford*, 1 Dana, 484, cited by that dis-

tinguished author, illustrates the principle, if, indeed, any illustration was needed of such a plain proposition. It is also true that the police power of the State extends to all kinds of restraints and burdens, in order to secure the general comfort, health and prosperity of the State, and this includes the right to enact suitable regulations looking to the accomplishment of a public purpose and designed for the promotion of public interests. Tiedeman's Limitations on Police Power, sec. 1 *et seq.*; Cooley's Const. Lim. [6 Ed.], p. 704 *et seq.* This power is universally recognized, and its application to any given law is the only question open to debate. The power to construct drains and sewers, to open and improve streets, to regulate the uses of private property so as to prevent nuisances, to establish fire limits in large and populous cities, to establish quarantine, to remove and isolate persons affected with smallpox and other contagious diseases in order to stop the spread of disease, is all dependent upon the police power of the State, exercised for the benefit of the health and well being of the people. In every case there must be the impress of a public purpose upon the law to make it constitutional. It is not enough that private interests will be subserved, or that private property will be enhanced in value. There must be a public interest applicable to a community of persons to be benefited. The health of the people is the substrata upon which the prosperity of the State rests, and laws conducive to health have always been upheld. In this case the police power of the State is broad enough to authorize the law in question (Welty on Assessments, secs. 350, 351 and 352; *Hagar v. Supervisors*, 47 Cal. 233), and the case itself is a striking illustration of the impossibility of attaining the end in view by private consent or co-operation and of the necessity of the State lending its aid to the accomplishment of

the purpose intended to be reached.     Levees must be continuous to be effective.     No man alone could accomplish any material good by constructing a levee in front of his own land, where his neighbors refused to do likewise.     The levee must all be built at once or it will fall short of the beneficent purpose intended.     The contrariety or selfishness of human nature makes it impossible to secure the co-operation of all persons whose concert of action is necessary to successfully cope with the common enemy of man, the floods.     One or more persons in a district may be willing to incur the almost certainty of disease or even death, rather than meet the small expenditure necessary to prevent it by building a common levee, just as they might be willing to run the risk of fire by constructing a cheap wooden house in a populous neighborhood, or of drinking impure well water, or of allowing nuisances and filth and disease-breeding agencies to remain on their premises.     The law can not control such cases simply because the person offending is pursuing a course injurious to his own interests, but the law can control and regulate him if other persons are injuriously affected by his conduct, because such other persons can not peaceably control him themselves.     This law would be unconstitutional if its only purpose and effect was to improve the value of the lands of the persons in the district, but such is not the only object of the law.     We take judicial notice of the fact that overflows are followed by disease, resultant from the decaying deposits left by the water, and that such disease is not and can not be confined to a single family, but spreads among the people of the locality without any fault of theirs, and which they are powerless to prevent.     This, then, is a proper case for governmental interference under the police power of the State, as

much so as the construction of drains and sewers. Cooley's Const. Lim. [6 Ed.], p. 627.

## II.

But while it is a public subdivision of the State and not a private corporation, it does not follow that the money to be raised from the landowners to carry out the objects intended, is a tax. It is an assessment which is justified by the benefit, public and private, conferred. The cost of the abatement of nuisances, for the construction of sewers or for the improvement of a street, may be assessed against the property benefited, notwithstanding the public and the owner are both interested. As a tax it would be unconstitutional, because not uniform (Const., sec. 3, art. 10) and because not in proportion to the value of the property (Const., sec. 4, art. 10) and because it is prohibited by the limitations of section 12 of article X of our Constitution, but being an assessment of benefits and in no sense a tax it is a constitutional exercise of the power of the State. *Lockwood v. St. Louis*, 24 Mo. 20; *Garrett v. St. Louis*, 25 Mo. 505; *Egyptian Levee Co. v. Hardin*, 27 Mo. 495; *St. Louis to use v. Clemens*, 36 Mo. 467; *Uhrig v. St. Louis*, 44 Mo. 458; *Sheehan v. Hospital*, 50 Mo. 155; *Southern Hotel Co. v. St. Louis County Court*, 62 Mo. 134; *Farrar v. St. Louis*, 80 Mo. 379; *St. Joseph v. Owen*, 110 Mo. 445; *Clinton to use v. Henry Co.*, 115 Mo. 557; *Roosevelt Hosp. v. Mayor*, 84 N. Y. 108; *Duke v. O'Bryan*, 39 S. W. Rep. 444; *Nugent v. Levee Com'rs*, 58 Miss. 197; *State ex rel. v. Stewart*, 74 Wis. 620; Dillon, Mun. Corp. [4 Ed.], sec. 755.

Assessments for the construction of levees to protect from overflow may be and usually are levied on lands bordering on the stream of water from which the danger is anticipated, and are properly benefits, as

contradistinguished from taxes, and laws authorizing them are constitutional. *Crowley v. Copley*, 2 La. Ann. 329; *Sessions v. Crunkilton*, 20 Ohio St. 349; *Yeatman v. Crandall*, 11 La. Ann. 220; *Wallace v. Shelton*, 14 La. Ann. 498; *Bishop v. Marks*, 15 La. Ann. 147; *McGehee v. Mathis*, 21 Ark. 40; *Jones v. Board Ald.*, 104 Mass. 461; *Egyptian Levee Co. v. Hardin*, 27 Mo. 495; *Hagar v. Supervisors*, 47 Cal. 231; *People v. Hagar*, 52 Cal. 183; *People v. Mayor*, 4 N. Y. 430; *Sears v. Cottrell*, 5 Mich. 251; *Emery v. Gas Co.*, 28 Cal. 345.

### III.

The law is not obnoxious to the objection of plaintiff that the lands in the district are taxed (assessed) upon their total value and not in proportion to the benefit conferred. Section 6679 requires the county court to cause the county assessor, "to assess the value of all lands in said levee district subject to overflow or inundation from rivers, and to be benefited by such work, having reference to the value of said lands without the work contemplated by this chapter, and shall assess the value thereof as improved by said work, in an assessment book to be provided for that purpose." That is, before the work can be done, the assessor is required to ascertain the value of the land as it is, and what it will be after the work is done. After this book is made up, section 6681 requires the board of directors of the levee district to give notice and hold a meeting of the land owners of the district, submit the report, specifications, surveys, maps, profiles, estimates and *assessments* as returned by the county assessor, to the meeting for action and require the owners of such lands to show cause why their lands should not be assessed with their proportionate part of the work. And section 6682 provides: "At such

meeting the report and estimates of the engineer and the assessment of the assessors shall be laid before the land owners present, an estimate of the probable cost of said work, and the probable rate per centum thereof on the value of said lands as increased by the said work, as will be necessary to pay for said work, shall be made known to the land owners present, and a vote shall be taken whether the work shall be done. . . . . . . And in order to determine whether said work shall be done, it shall require a majority of the votes of the land owners of the district cast in favor of the work.''

Thus it is determined before the work is commenced how much each tract of land will be benefited, what the probable cost will be, and the consent of the majority of the persons affected is necessary to do the work. A fairer method of assessment could scarcely be imagined. It is much more so than is usually found in the laws regulating public improvements and assessments therefor.

## IV.

In view of the conclusions hereinbefore reached, there is no merit in the contention that the law takes private property for public use without just compensation. *Kansas City v. Ward*, 134 Mo. 172.

## V.

Whether the requisite notices were given of the several proceedings required by the law is a question of fact. The answer specifically alleged compliance with the law showing exactly how it had been done. The demurrer admitted these well pleaded allegations, so they must be taken as true, and the demurrer could not have been sustained for want of compliance with the law in this regard.

## VI.

The validity of the act of 1893, authorizing the payment of the assessments in instalments, and the issuance of bonds specifically and solely payable out of the collections of the assessments, is not seriously questioned. Nor is it open to doubt. Wherever the legislature has the right to authorize special assessments for benefits conferred by public improvements, it has the right to determine when and in what manner the assessments shall be paid, whether presently upon the completion of the work, or in instalments, and it likewise has the right to authorize the issuance of bonds secured by the assessments and payable exclusivly out of the proceeds thereof. Such bonds do not amount to an increase of municipal indebtedness, for they are no charge upon the municipality and are based solely upon the credit of the assessments upon private property, and are expressly payable out of the proceeds of collections of such assessments. They are therefore legal, and not within any constitutional limitation in this state. *Kansas City v. Ward*, 134 Mo. 172.

It results that the circuit court erred in sustaining the demurrer to defendant's answer, and its judgment will be reversed and the cause remanded to that court to be proceeded with in conformity herewith. All concur.