## SQUAW CREEK DRAINAGE DISTRICT, Appellant, v. JOHN TURNEY.

### Division One, June 1, 1911.

1. **DRAINAGE DISTRICT: Benefits: Question of Fact.** An objection that the extension of the boundaries of the drainage district will not be of benefit to the lands of the objector, raises a question of fact, which it is the duty of the trial court to determine, and if he tried it and found it in favor of the objector, it is not within the province of the appellate court to disturb that finding, where the evidence is conflicting.

2. ———: **Adding New Territory: Retrospective Statute: Debts.** Under the Act of 1895, providing that any drainage district organized under article 3 of the Drainage Law "may be enlarged and the boundaries extended so as to include other lands contiguous thereto," a drainage district may be enlarged to include lands not heretofore embraced within its boundaries, although the district, prior to the enactment, had issued bonds and contracted debts in a large amount in the construction of ditches for the benefit of lands included therein, in which the owner of lands not included therein had no voice, and which debts he must assist in paying if his lands are included. To so apply the statute is not to give it the retrospective operation inhibited by the Constitution. The Legislature may give to a drainage district power, by judicial proceedings, to extend its limits so as to include the property of persons having had no voice in its prior proceedings and to subject their property to such benefit assessments as are necessary to the execution of its public functions.

3. ———: **Land Excluded at Organization: Adjudicata.** The mere fact that defendant's land, now sought to be added to the drainage district, was on his objection excluded by the court at the time of the organization of the district, does not alone constitute a former adjudication of his right to have said lands

now excluded, in the absence of any showing of the grounds upon which they were then excluded. Where there existed more than one legal ground for excluding them, it cannot be held on which ground the decision was based, unless that is made to appear.

4. ————: ————: **May Be Included.** Lands excluded by the court upon the owner's objection from the drainage district at the time of its organization may be included by a subsequent extension of its boundaries, whenever conditions arise which indicate the necessity and reasonableness of such extension.

5. ————: **Similarity to Municipal Corporations.** With respect to their creation, power and growth, there are many points of similarity between drainage districts and municipal corporations. Both are created for the purpose of exercising important functions belonging to the general police powers of the State. The functions of both include the subject of drainage in its relation to the health and property of the localities in which they exist. Outlying lands may be of the highest necessity to a city for the purpose of drainage, and so they may be to a drainage district; and there is no reason why the boundaries of the district may not be extended to include lands not embraced therein at the time of its organization, when they become necessary to the performance of the drainage function, just as the limits of a city may be extended for the same purpose.

Appeal from Holt Circuit Court.—*Hon. Wm. C. Ellison,* Judge.

REVERSED AND REMANDED.

*T. C. Dungan* for appellant.

(1) The legislative authority to enact drainage laws is derived from the police powers, the right of eminent domain and the taxing power of the State, and the test of their validity is in the object and purposes thereof. Duke v. O'Brien, 100 Ky. 710; Wurtz v. Hoagland, 114 U. S. 606; Gifford Drainage Dist. v. Shroer, 145 Ind. 572; State v. Polk Co., 87 Minn. 325; People v. Reclamation Dist., 117 Cal. 114. And as the State by its Legislature has power to reclaim swamp and wet lands directly or by its own agents, so it has

power to do so through the intervention of drainage
districts created for that purpose and such districts
are held to be *quasi* public municipal corporations or
public agencies of the State.    Mound City L. & S. Co. v.
Miller, 170 Mo. 240; People v. Reclamation Dist., 53
Cal. 346; Land Owners v. People, 113 Ill. 296.    (2)
Sec. 8253a, Act of 1905, now sec. 5500, R. S. 1909, seems
to authorize and compel the circuit court to make an
order annexing or including such lands, on the first
day of the term, provided there were after the sum-
mons no objections filed by the land owner whose lands
are sought to be taken in.    If such objections, how-
ever, were filed as in this case, the court should hear
such objections in a summary manner, not that the
board or the district should by a preponderance of evi-
dence established and show that such lands should be
included and made subject to assessment for benefits.
The discretion, determination and judgment of the
board evidenced by the filing of their petition asking for
annexation or inclusion, constitutes and makes a prima-
facie case, and the defendant land owner must in his
objections set up and plead and by his evidence show
good cause to overcome such prima-facie showing or
presumption; the burden is upon the objecting land
owner.    The statute says if no objections are made
the court shall order it included, but if objections are
made the court, after hearing them in a summary
manner, shall order all or any part thereof included
as may appear just; no power or discretion is granted
to the court to exclude all.    State ex rel. v. Sullivan,
118 N. W. (Neb.) 85; State v. Fuller, 120 N. W. 495;
Drainage Dist. v. Harroun, 222 Ill. 489; Trigger v.
Drainage Dist., 61 N. E. (Ill.) 1114; Dayton v. Ruther-
ford, 21 N. E. (Ill.) 198.    (3)  The court erred in over-
ruling plaintiff's motion to strike out parts of defend-
ant's answer and objections.    The said parts of said
answer set up and stated no good grounds of objection
to plaintiff's petition and the cause of action stated

therein. Sec. 5500, R. S. 1909, cases cited under Point 1; Trigger v. Drainage, 61 N. E. (Ill.) 1114. (4) The decree of the court excluding defendant's said land from the original proceedings for the incorporation of said drainage district was not *res adjudicata* and was and is no bar to this proceeding. No topographical survey had at that time been made. No scheme or plan of drainage had been formulated or adopted and no work or improvement had been commenced or completed and no lands had been benefited or improved. It has now been demonstrated to the board and the evidence clearly shows that defendant's said lands have actually been improved and that they will be still more greatly benefited by the construction of lateral ditches contemplated and provided for by plaintiff's scheme and plan of drainage adopted. (5) Defendant's fourth objection that the including of defendant's land as prayed for would be violative of section 15 of article 2 of the State Constitution is likewise without merit. Said section 5500 is not an *ex post facto* law; it is not retrospective in its operation, nor does it impair the obligation of any contract herein in any manner whatever. Gladney v. Sydnor, 172 Mo. 318; Kreyling v. O'Reilly, 97 Mo. App. 384; Vanata v. Johnson, 170 Mo. 269; State ex rel. v. County Court, 128 Mo. 427; County Court v. United States, 118 U. S. 72; Watson Seminary v. County Court, 149 Mo. 57; Barton Co. v. Walser, 47 Mo. 189.

*Ivan Blair* and *John W. Stokes* for respondent.

BROWN, C.—This proceeding was instituted July 27, 1907, by presenting a petition to the circuit court for Holt county, asking that the boundaries of the petitioner, Squaw Creek Drainage District No. 1, in said county, be extended so as to include a tract of land in said county contiguous to said drainage district, described as the west half of the northwest quar-

ter of the northwest quarter of section thirty, in township sixty, of range thirty-eight, containing 20.88 acres.

The petition stated as the reason therefor, that the said tract of land has been greatly benefited by the drainage system adopted and the work and improvements made and done thereunder, and will be much more benefited by the completion of the proposed drainage and plan of improvement when perfected and completed, and ought to be included in said district and be made to bear its just proportion of the benefits done and received, and to be done and received by the said drainage system, and work to be done hereafter.

Summons was issued as provided by section 8253a of the act approved April 8, 1905, Laws 1905, p. 190, and the defendant, the owner of the land sought to be annexed appeared, and at the August term, 1907, of said court, filed an amended answer consisting of four paragraphs substantially as follows:

(1). Admitted that the plaintiff drainage district was a corporation, that the individuals so designated constituted its board of supervisors, and that defendant was the legal owner and in possession of the land; and denied every other allegation of the petition.

(2). That in an action brought in said court by the Mound City Land Company and others against defendant and other parties to secure the incorporation of the Ditch Company, the same land was included in the articles of association presented for that purpose, and that upon the objection of defendant the said matter was adjudicated by the court in his favor by judgment and decree made May 2, 1900, excluding said land from the drainage district.

(3). That the said land had been excluded from the drainage district, which had, since its incorporation, incurred a bonded indebtedness of $80,000 then outstanding, in which the defendant had no voice; that

in the system of drainage adopted by the district no consideration was given to defendant's said lands; that the ditches constructed were all solely for the purpose of draining and benefiting the lands originally included in the district, and not for the benefit of lands not included therein; that defendant's lands "sought to be included in said district will not and cannot hereafter receive any benefit from said drainage district which has not been received now;" and that the sole purpose of plaintiff in this proceeding is to compel defendant to aid in the payment of said bonded indebtedness and interest.

(4). That the inclusion of defendant's lands in said district "would be a violation of section 15 of article 2 of the Constitution of the State of Missouri, by giving the statute under which plaintiff's action is brought a retrospective effect and making it *ex post facto* in its operation;" and would also violate article 10 of said Constitution.

The plaintiff moved to strike out the second and third paragraphs of the answer on the ground that neither of them constituted any defence to the plaintiff's cause of action, and were merely surplusage. The motion was overruled and the plaintiff excepted, filed its reply and went to trial.

Before introducing any evidence it was agreed as follows: "That the lands in controversy were included in the original articles as filed in the circuit court, and that upon objections being made in due form and in proper time, by the adjudication of the court said lands were excluded—all as alleged in the objection filed in this proceeding; and that part of the original proceedings incorporating the district referring to the objections to including the lands now in controversy in the original district, and the judgment of the court in reference thereto, are considered in evidence and part of the testimony in this case. The objections and the rulings on them."

As a matter of fact no part of the record in the proceeding to incorporate Squaw Creek Drainage District No. 1 is included in the bill of exceptions, or otherwise referred to in this record.

Oral evidence was introduced both for and against the proposition that the tract of land in controversy had been or would be benefited by the drainage system of the Squaw Creek Drainage District No. 1; and thereupon the court, without any declaration of law being asked or given, and without any finding of fact, gave judgment that the prayer of the plaintiff's petition be denied and refused, and that the plaintiff take nothing in this action, and that the defendant go thence without day, and that he recover of and from plaintiff his costs, taxed at $24.55.

The plaintiff thereupon filed its motion for a new trial, stating, among other things, that the finding and judgment of the court was against the law and the evidence, and that the court erred in overruling plaintiff's motion to strike out parts of defendant's amended answer, which was overruled by the court and plaintiff excepted, filed its bill of exceptions and brought the case here by appeal.

The plaintiff, Squaw Creek Drainage District No. 1, was incorporated in 1900 by a decree of the circuit court of Holt county in a proceeding instituted and conducted under the authority of section 8251, Revised Statutes 1899, and subsequent sections, for the purpose of having certain swamp and overflowed lands in that county reclaimed. Its supervisors seem to have proceeded with the work, so that at the time of instituting this proceeding they had constructed, in accordance with plans and surveys made as provided in the statute, ditches and other works which tended to the accomplishment of the object for which it was organized.

Up to the time of the passage of the act approved April 8, 1905, amending the provisions of article III,

chapter 122, of the Revised Statutes then in force relating to swamp and overflowed lands, there seems to have been no way by which they could enlarge the territorial scope of their undertaking. Their incorporation must necessarily precede the execution of their surveys and plans, so that the development of these details might show that their neighbors would participate as largely in the benefits and profits of the enterprise as themselves, yet they could not be made to participate in the cost, which must be paid by the landowners of the original district. The Act of 1905 undertook to correct this by providing in substance (section 8253a) that "any drainage district organized under the provisions of this chapter may be enlarged and the boundaries extended so as to include other lands contiguous thereto." To do this it required that the board of supervisors of the district should present a petition to the circuit court, asking that the boundaries of the district be extended to include such lands, particularly describing them and giving the names of the owners. On this petition summons was required to issue, returnable the first day of the next term, and if no objection was made to the petition on that day, the court was required to order the boundaries to be extended and the additional lands included as prayed. If objection should be made the court was required to hear the same in a summary manner and order all or any part of such lands included as might appear just, and thereafter the lands so included were subjected to all duties, assessments and liabilities, and entitled to all the benefits and privileges of said district, the same as those originally incorporated.

The proceeding in which this appeal is pending was instituted under this statute for the purpose of extending the limits of the district so as to include the twenty acres of land involved in this controversy. It was begun July 27, 1907, by the filing of the petition, in which the ground stated for the relief asked is that

the tract of land sought to be included has been greatly benefited by the adoption of the drainage system and the work done thereunder, and will be further benefited by the completion of such system, and ought therefore to be made to bear its just proportion of the cost.

It will be observed. that the proceeding is made by the statute a "summary" one, and the only requirement resting upon the defendant disputing the asserted right is that he shall make objections, which the court is then required to hear in a summary manner. In this case the defendant filed what he chose to designate an "amended answer." This name seems to have been accepted without question by the court, and there can be no doubt that all such objections to the inclusion in the District of defendant's land as are stated in this paper were made in compliance with the act, and it thereupon became the duty of the court to hear such objections as issues of law or fact as the case might be. They are substantially as follows:

(1). A denial of the past and future benefits to defendant's land.

(2). That all questions relating to such benefits, both past, present and prospective, had been tried and determined at the time of the judgment of the circuit court establishing and incorporating the drainage district; that this determination had been against the existence of all such benefits, and that they were consequently no longer open to assertion.

(3) That soon after the organization of the drainage district bonded indebtedness, amounting to eighty thousand dollars, had been incurred by it to carry on the purposes of its incorporation, and that defendant had no voice either in the creation of the indebtedness or the plan under which the proceeds of its bonds were to be expended.

(4). That the inclusion of defendant's land would require such a construction of the Act of 1905 as would

make it retrospective in its operation, in violation of section 15 of article 2 of the State Constitution.

The first of these objections raises a question of fact which it was the duty of the circuit court to try, and if it was tried, and found in favor of the defendant, it is not within the province of this court, upon the conflicting evidence shown in the record, to disturb such finding.

But the plaintiff, assuming that the questions raised in the second and third paragraphs were questions of law and should be heard accordingly, undertook to reach that result by a motion to strike out those paragraphs and each of them on the grounds that they were mere surplusage, and that neither of them constituted any defense to the petition. This motion was taken up and considered by the court and overruled, to which exception was taken by the plaintiff and the case was thereupon called for trial. The court opened the trial with the following statement:

"On the trial of the objections of John Turney, it was agreed that the lands in controversy were included in the original articles as filed in the circuit court, and that upon objections being made in due form and in proper time, by the adjudication of the court said lands were excluded—all as alleged in the objections filed in this proceeding; and that part of the original proceedings incorporating the district referring to the objections to including the lands now in controversy in the original district, and the judgment of the court in reference thereto, are considered in evidence and part of the testimony in this case. The objections and the rulings on them:"

And at the close of petitioner's evidence it was agreed, in substance, that defendant had never had any voice or vote in the organization or business of the corporation.

It appears from the foregoing that the court expressly recognized the second and third paragraphs

of the "amended answer" as "objections" made in accordance with the Act of 1905, that it passed on them as such, and that the case went to trial upon the theory that these paragraphs stated valid objections to the granting of the prayer of the petition; so that the only questions that need to be considered on this appeal are such as arise out of the action of the court in overruling the motion of the petitioner to strike them from the answer. These questions, stated for convenience in reverse order to that in which they occur in the answer, are as follows:

(1). Does section 8253a of the Act of 1905, under which this proceeding was instituted, apply to drainage districts which were organized under the provisions of section 8251, Revised Statutes 1899, and had made their plans, entered upon the execution of their work, and issued bonds before the passage of the Act of 1905?

(2). Did the judgment or decree of the Holt circuit court, by which the Squaw Creek Drainage District No. 1 was incorporated, and in pursuance of which it was organized, constitute a final adjudication of the right to include the defendant's land in the drainage district?

The Squaw Creek Drainage District was declared by the law under which it was organized "a public corporation of this State." [R. S. 1899, sec. 8253.] "It is a public political subdivision of the State which the State has the power to create under its police powers, and as such subdivision exercises the prescribed functions of government in the district." [Morrison v. Morey, 146 Mo. 543, 561; State v. Drainage District, 192 Mo. 517; Mound City Land and Stock Company v. Miller, 170 Mo. 240; State v. Taylor, 224 Mo. 393, 469.] Availing ourselves of the language of this court in the case last cited, "this district is as much a public corporation as are the cities of St. Louis and Hannibal." There is no longer any question as to the power

of the Legislature to create such a corporation and to invest it with all the necessary power to construct whatever works may be necessary to render valuable and productive all that portion of the State included within the limits of its corporate jurisdiction, and to raise the funds necessary to pay for the same by assessment on the lands to be benefited thereby. That this class of assessment does no violation to those provisions of the Constitution prescribing uniformity of taxation and limiting the objects for which it may be imposed, has become well settled in this State. In Morrison v. Morey, supra, this court, referring to the levee district which was the subject of the litigation before it, said: "But while it is a public subdivision of the State and not a private corporation, it does not follow that the money to be raised from the land-owners to carry out the objects intended, is a tax. It is an assessment which is justified by the benefit, public and private, conferred. The costs of the abatement of nuisances, of the construction of sewers or of the improvement of a street may be assessed against the property benefited, notwithstanding the public and owner are both interested. As a tax it would be unconstitutional, because not uniform (Const., sec. 3, art. 10), and because not in proportion to the value of the property (Const., sec. 4, art. 10), and because it is prohibited by the limitations of section 12 of article 10 of our Constitution; but being an assessment of benefits and in no sense a tax, it is a constitutional exercise of the power of the State."

In this case, however, it is intimated by the respondent that the Constitution will be violated by granting the relief asked in the petition, because this tax is to be imposed to pay an indebtedness which has been incurred without his consent, by a governmental instrumentality in which he had no part, composed of an association of interested persons of which he was not a member. He says in fact that the extension of

the district so as to include his land, is a device by which an association of debtors have determined and are attempting to compel him, without his consent and against his will, to help them pay their debt, and that for this reason the statute under which this proceeding is brought would be unconstitutional in its application to this case, because such application would require that it be given a retrospective operation in violation of section 15 of article 2 of the State Constitution.

It is not contended that the section under which this proceeding was instituted was not intended to apply to the Squaw Creek Drainage District as well as all other drainage districts that had theretofore been incorporated in pursuance of article III, chapter 122, Revised Statutes 1899. In fact the words of the Act of 1905 are conclusive of such intention. Although it repeals certain sections of this article it enacts others which it expressly states to be "in lieu" of the sections so repealed, thus expressing in unmistakable terms its intention to preserve the continuity of the article and chapter so amended, and to apply the same identical name to the new law. It then uses that name in section 8253a by which this proceeding is authorized, making it applicable to "any drainage district organized under the provisions of *this chapter*." It is difficult to see how more apt words could have been selected than these to make the new provisions applicable to all corporations already organized or to be organized under the chapter so designated; so that the only question as to its applicability to this district, is the constitutional one expressly made by the respondent.

A retrospective law is one which creates a new obligation, imposes a new duty, or attaches a new disability with respect to transactions or considerations already past. It must give to something already done a different effect from that which it had when it transpired.

In this case the only ground upon which a retrospective application of this statute is asserted is that it applies to an object already in existence at the time of its enactment. Were this a good objection it would lead to startling results, for it could be as well claimed that no statute could be enacted imposing new duties upon or giving new privileges or rights to a person already born as that these things could not be done by the Legislature with reference to a corporation already created.

It may be that in the third paragraph of its answer, the respondent intended to intimate that by taking him into this drainage district and thereby imposing upon him the burden of taxation to pay an indebtedness already created, some other constitutional right of his would be invaded than the one which he specified. If so he has failed to point it out. Notwithstanding the omission, however, it may not be entirely improper to suggest that it seems to be well settled in this State that the Legislature may give to a municipal corporation the power by its own unaided act expressed in an ordinance, to extend its limits so as to include the property and persons of those having no voice whatever in the transaction, and subject them to taxation for all purposes to the same extent as original members of the corporation, subject only to the qualification that such action must be reasonable. [Kelly v. Meeks, 87 Mo. 396; Copeland v. St. Joseph, 126 Mo. 417.] This being true we cannot see why a public corporation of this character invested with all the necessary power and authority to do whatever should be necessary in the execution of its public functions, could not be invested by the Legislature with authority to procure the extension of its limits by a judicial proceeding in which the reasonableness and necessity of the action is in issue.

It follows that the provisions of the Act of 1905 which authorizes the extension of drainage districts

organized under the provisions of the chapter of which it is amendatory, applies to the Squaw Creek District, notwithstanding the constitutional and other objections made by defendant.

The second paragraph of defendant's answer, which is intended to set up as an objection to the granting of the relief asked in the petition a former adjudication of the very matter involved in this proceeding, can, by a little friendly construction, be construed to state that the articles of incorporation of the Squaw Creek Drainage District No. 1 were, at some time previous to May 2, 1900, filed in the office of the clerk of the circuit court for Holt county; that the said articles included the land now in controversy; that this defendant was then the owner of said land and excepted to its inclusion in the proposed district, and that thereupon it was excluded, and the drainage district was on the date above mentioned incorporated without it. There is nothing in the record in this case to show the ground upon which such exception was based, or of the decision of the court to exclude the land, so that we are entirely without information as to the question which was then decided.

In order to constitute a former adjudication it must affirmatively appear that the matter in dispute was put in issue and tried. This is illustrated in Eckert v. Pickel, 59 Ia. 545, in which the court was called upon by the record to answer the following question: "Where, in defense to an action on a promissory note, defendant alleges in his answer that the note was fraudulently altered after its execution without the knowledge or consent of defendant, and a general verdict and judgment are in favor of the defendant, are such verdict and judgment an adjudication that the alteration of the note was fraudulent?" This question was answered in the negative by the court upon the ground that proof of the alteration only would have constituted a defence in the former

suit, so that the question of fraud, although pleaded, was not necessarily an element in the controversy, and proof of it was not necessary to sustain the verdict and judgment. This principle will be found stated in a multitude of cases, and applied to the record now before us it sets us to speculating as to the grounds on which the exclusion of defendant's land in this case could have been based—whether, for instance, the insusceptibility of this particular land to improvement, or the fact that it was already provided for by membership in another drainage corporation.

The question is, however, an important one, and, as the case may be tried again, some suggestions as to whether or not the question now before us could have been adjudicated in the proceedings for incorporation may be of assistance in such trial.

Under the statutes then and now in force the first proceeding in the incorporation of the district was the filing with the clerk of the circuit court of articles of incorporation, signed by such owners of swamp and overflowed lands as were willing to obligate themselves to pay the taxes that might be assessed against them to provide for the expense of the improvement of all the lands in the proposed district, of which these signers must represent a majority in interest. This proceeding was, in the very nature of things, purely experimental, in which the court was called upon to assist in determining the quantity and description of the lands which would probably be benefited by the work to be afterward planned and executed, and the judgment of which the defendant attempts to avail himself as a defence to this proceeding was simply and necessarily preliminary and tentative. After it was rendered came the opportunity for ascertaining the facts, first by the election of supervisors as provided in section 8255, Revised Statutes 1899, and their organization, and, second, by the employment of a competent engineer and making a

complete topographical survey of the district, with maps and profiles, and full and complete plans for draining and reclaiming said district, with length and depth of the ditches, the length and height of all dykes and levees and nature and character of other artificial work necessary for such purpose, and its cost. The cost of this elaborate work of preparation and information was to be assessed against the lands of the district and paid by the board of supervisors. [Sec. 8262.] When all this had been done the tentative formation indicated by the judgment of the circuit court had evidently served its purpose, and the board of supervisors were in complete possession of all the facts necessary to judge in a preliminary way how the different tracts of land that had been called upon to bear this expense would be affected by the proposed work if it should be completed according to the original plan. Many things might yet transpire, however, to change the conditions so ascertained. The cutting of ditches and making of embankments, dykes and levees, the cleaning of channels and the occurrence of floods with their deposits of sediment which might completely change the topography of any locality in the district—any or all these causes might make a revision of the original plan and district necessary. Persons who were unwilling to join in the formation of the district, making it impossible to obtain a sufficient number of incorporators to include their lands, would be given the chance to enjoy the fruits of the work as it proceeded, and to build ditches of their own to discharge the overflow of their lands into the ditches and streams constructed and improved at the expense of their neighbors, without participating to any extent in the cost.

The attention of the Legislature of 1905 seems to have been called to these difficulties and absurdities, and it undertook to provide for them by the amendment under which this proceeding was instituted and

certain other changes, the most important of which, in this connection, is the section which has been continued in the Revised Statutes of 1909 as section 5531, which provides, among other things, that at the time of the construction of the plan of drainage referred to, all ditches or systems of drainage then constructed in the district, and all watercourses, shall, if necessary to the draining of lands in the district, be connected with and made part of the works and improvements of the plan, and that ditches, drains or systems of drainage constructed in the district after the completion of the general plan may be connected therewith; and that if the board of supervisors shall refuse their consent the landowner or owner may file a petition for such connection in the circuit court. having jurisdiction, and that said court shall thereupon decide the matter in dispute in a summary manner. It further provided, in substance, that any ditch, drain, cut, fill, roadbed, levee, embankment or artificial drainage wholly without the limits of the district might in the same manner be connected with the works entirely within it.

There can be no doubt of the necessity of these amendments to promote justice and fairness between neighbors equally benefited, and to increase the efficiency and usefulness of the laws providing for the reclamation of these lands.

There are many points of similarity between these organizations and municipal corporations, with respect to their creation, power and growth. Both are created for the purpose of exercising important functions belonging to the general police power of the State, in districts in which peculiar conditions call for such local instrumentalities. They differ only in the respect that the duties to be performed by the municipal corporation are more general in their scope; but the functions of both include the subject of drainage

235 Sup—7.

in its relation to the health and property of the local-
ities in which they exist, and their territorial useful-
ness broadens with their success in the prosecution
of the purposes for which they are instituted. As in
case of the city, outlying lands may become of the
highest importance for purposes of drainage, as was
said by this court in Kansas City v. Stegmiller, 151
Mo. 189, 209, so by the operation of the same natural
laws the same result may follow in case of the drain-
age district, and the operation of these laws creates
the necessity for the extension of the limits of both.

Both the municipal corporation and the drainage
corporation are formed in this State upon the initi-
ative of those interested with respect to the welfare
of their persons and property, and there is no con-
stitutional reason in the world why both cannot be
similarly extended. As we have already said, it has
become the settled law of this State that the limits of
the municipal corporation may be reasonably extend-
ed by the unaided action of the members of the mu-
nicipality, and we can imagine no reason why the
limits of the drainage district cannot be extended by
the action of the members of the original community
with the judicial assistance of the courts, whenever
conditions arise which indicate the propriety of such
a course. We do not think that the exclusion, by the
decree of the court, of lands described in the articles
of association, has any other or greater effect than
would the omission of the same lands from the articles
of association as originally filed. In either case the
limits may be extended to include them when the
necessity arises.

For these reasons we think the circuit court of
Holt county erred in sustaining the objections stated
in the second and third paragraphs of the "amended
answer" in the manner shown by the record, and its
judgment is accordingly reversed, and the cause re-

manded for trial consistently with the principles above stated. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.