THE STATE v. GILMORE, *Appellant.*

Division Two, November 23, 1897.

1. **Necessary and Implied Conditions in Judgments:** ERECTING MILLDAM: VESTED RIGHT. A section of the statute, imposing certain conditions on those erecting a milldam, was not copied into a judgment of the circuit court, giving defendant's grantors permission to erect the dam. *Held,* that it was not necessary to either copy the statute or include the conditions in the judgment, the rule being that whatsoever the law will imply in a judgment or contract is as much a part thereof as if inserted in terms. *Held,* also, that although the judgment granting permission to erect the milldam contained no conditions, yet as the statute provided that the permission should be subject to such conditions as the court might in the future impose, defendant's rights were not thereby fixed, and the legislature might subsequently direct what conditions the courts should impose.

2. **Milldam:** OPEN FISHWAY: RULE OF LAW. Unless there is a statute on the subject the general rule of law is that one who is granted authority to build a dam for mill purposes constructs it under an implied obligation to keep open sufficient fishways for the passage of fish; and this is always the case unless such implied obligation is excluded by an express provision exempting the dam-builder from such implied duty.

3. ———: OBSTRUCTION TO FISH: RES ADJUDICATA: FINDING OF JURY. In a proceeding in the circuit court, under Revised Statutes 1855, begun for the purpose of granting permission to one Clapp to build a milldam, the jury found that "no *injury* to fish of passage" would result from such dam. The judgment said nothing about either the *injury* or *obstruction* to fish that would be caused thereby. The statute said that the "judgment" granting permission to build a dam

"shall be upon and subject to such conditions in reference to *obstruc-tions* to fish of passage as the court shall think proper to impose." *Held,* that the jury did not pass upon the question of whether or not the dam would *obstruct* the passage of fish, *and* that the present owner of the dam could not claim that he had any *vested* right as against the State, which by legislative enactment in 1881 made it a misdemeanor not to so maintain a chute on a milldam as to permit the ready passage of fish.

4. **Vested Rights**: CONTRACTS WITH THE STATE. There can be no contract with the State without a consideration moving from the other party; and if the State grants to a certain person permission to erect a milldam, receiving itself no beneficial equivalent, the concession amounts to a mere privilege, which may be revoked at any time.

5. **Indictment**: SUFFICIENCY: MILLDAM CONSTRUCTION. The statute requires that the owner of a milldam "shall place and maintain thereon a chute not less than fifteen feet wide . . . . . . . *so situated* that the main current of water shall pass over the same." The in-dictment stated that the defendant "did unlawfully erect . . . . . . . a dam, without placing and maintaining upon said dam a chute . . . . . . . and *not so situated* that the current of water can not pass over said chute." *Held* insufficient, and as charging just exactly the opposite of what the statute requires, and therefore the defendant discharged.

*Appeal from Christian Circuit Court.*—HON. JAMES T. NEVILLE, Judge.

REVERSED.

*James R. Vaughan* for appellant.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) The statutory franchise to erect a milldam does not give grantee any vested right, and what he takes by such franchise is subject to regulation and control of the State. Cooley, Const. Lim., p. 473; *Pratt v. Brown*, 3 Wis. 603. (2) It is a settled principle of law that power resides in the several States to regulate and control the passage of migratory fish in

the waters within their respective jurisdictions. *Lawton v. Steel*, 119 N. Y. 226. (3) Every grant of a right to maintain a milldam across a stream where migratory fish are accustomed to pass is given and taken subject to the condition and limitation that a sufficient and reasonable method shall be allowed for the fish to pass unless said right is denied by the express provisions of the grant. *Commonwealth v. Essex County*, 13 Gray, 250; *Commonwealth v. Chapin*, 5 Pick. 199; *Stoughton v. Baker*, 4 Mass. 522; *Charles River Bridge v. Warren Bridge*, 11 Peters, 548; *Boston v. Richardson*, 13 Allen, 156. (4) The statutory rule as to the construction of legislative acts surrendering public rights is that the courts hold that the legislature does not, without express declaration or clear and unmistakable manifestation of intent, mean to be understood as giving any public right or stripping the State of its prerogatives. Endlich on Interp. of Stat., sec. 356; *Water Commissioners v. Hudson*, 13 N. J. Eq. 420; *Bougigion Bldg. Ass'n v. Commonwealth*, 98 Pa. St. 54; *People v. Mayor of N. Y.*, 32 Barb. 102; *Railroad v. Boston*, 111 Mass. 125; *Thorp v. Railroad*, 27 Vt. 140; *Chouteau v. Railroad*, 122 Mo. 375; Cooley, Const. Lim. [6 Ed.], pp. 340, 341; *Church v. Mayor of N. Y.*, 5 Cowen, 538; *State v. Sterling*, 8 Mo. 697; *State v. Freleigh*, 8 Mo. 607. (5) It is no defense to an indictment for maintaining a nuisance by the erection of a milldam that the defendant may have acquired a right by virtue of a writ of *adquod damnum; State v. Franklin Falls Co.*, 49 N. H. 240; *State v. Robers*, 59 N. H. 256; *Ryorson v. Brown*, 35 Mich. 333; *Commonwealth v. Stephens*, 10 Pick. 247; Gould on Waters, sec. 581; *Trustees v. Tuttle*, 30 Ohio St. 62. (6) The indictment in this case is sufficient. The pleader has followed the language of the statute. *State v. Griffin*, 89 Mo. 49.

SHERWOOD, J.—This prosecution was instituted against defendant for failure to maintain upon a dam owned by him, a chute for the passage of fish.

The indictment, so far as necessary to quote, is the following: "That H. G. Gilmore, late of the county and State aforesaid, on the 28th day of February, A. D. 1896, at the county of Christian and State of Missouri, did then and there unlawfully erect and maintain in and across certain waters of this State, to wit, Finley Creek, said waters not being then and there wholly upon the premises of said H. G. Gilmore, a certain dam, without then and there placing and maintaining upon said dam a chute and apron of not less than fifteen feet wide, and sloping from each side to the center, the same so that such center should be at least six inches lower than either edge, and having an inclination of not more than forty-five degrees, and not so situated that the main current of water of said Finley Creek can not pass over said apron and chute, against the peace and dignity of the State."

The proceedings under which permission was granted to the original owner of the mill in question were instituted and completed in the year 1858, and while the Revised Statutes of 1855 were in force. The jury summoned found as follows: "*First.* That no proprietor will sustain any damage from inundation. *Second.* That no injury will be sustained by any proprietor of a mansion house or outhouse, curtilages, garden, or orchards. *Third.* That no injury to fish of passage. *Fourth.* That the health of the neighborhood will not be materially injured or damaged in consequence of such erection." Thereupon the circuit court caused to be made this entry: "And it appearing from the petition that said petitioners desire to erect a dam across a stream of water called Finley Creek, on the

following land, viz., southwest quarter of southeast quarter, section 36, township 27, range 22, the said petitioners being the owners of the land on both sides of said stream, it is therefore ordered, adjudged, and decreed by the court that said Alexander Clapp and J. P. Clapp be permitted to erect a dam across said Finley Creek at the place aforesaid for the purpose of connecting to said dam a saw and grist mill, and that the costs of the proceeding be paid by said petitioners.'' The Clapps were the owners of the land on both sides of the stream (Finley), on which they sought to obtain permission to build a dam. Defendant, by *mesne* conveyances, is the owner of said land, and had built no chute for the passage of fish as required by section 7023, Revised Statutes 1889. (Laws 1881, p. 138.)

The trial by the court resulted in finding defendant guilty, and fining him $1.

Three declarations of law were asked by defendant and refused by the court, to wit:

''1.   That upon the evidence in this case the said defendant is not guilty.

''2.   That if the right to erect and maintain the dam was given to A. Clapp and J. P. Clapp, in 1858, by virtue of and under certain condemnation proceedings had in 1858, in the circuit court of Greene county, Missouri, and the defendant is now the owner of said mill and said rights, and was at the time alleged in said indictment, then the said defendant is not guilty.

''3.   That if the said defendant now or at the time alleged in the indictment owned said mill and the rights to erect and maintain the dam originally conferred upon A. Clapp and J. P. Clapp, then the legislature had no right nor power to fix additional burdens on him or them and other owners, by requiring him or them to erect and maintain chutes for the passage of fish.''

There are well considered cases to be found which

deny that the court can exercise the power of eminent domain for the purpose of condemning land for a milldam, but owing to our statutes from an early date on that subject, as well as frequent decisions on that point, such power must be taken as conceded and therefore no longer open to discussion.

The contention of defendant is to the effect that defendant's rights were fixed by the mill act as it stood in 1858; and that inasmuch as "the court made no order in regard to a fishway at the time the permission" to build a dam was given, that thereby an "*unconditional* permission" was given to build such dam, which, upon the dam being built, amounted to a grant and contract between the State and the Clapps, and vested such rights in the latter and their successors in estate as prevented the State, unless upon due compensation made, from the imposition of additional burdens upon the rights thus granted; and that any law imposing, in such circumstances, additional burdens, would be unconstitutional, because of impairing the obligation of a contract.

Section 20 of milldam law referred to, Revised Statutes, 1855, page 1084, provides: "The judgment and order," granting permission to build a dam, "and the rights and privileges thereby granted shall in all cases be upon and subject to the conditions following: *First*, such conditions in reference to obstructions to fish of passage and ordinary navigation as the court shall think proper to impose; *second*, that all damages and valuations assessed and made by the jury shall be paid; *third*, that the dam and mills, or other machinery shall be commenced within one year and finished and ready for business within three years from date of the order of permission; *fourth*, that whenever the dam, or mill, or other machinery shall be destroyed or materially impaired, the same shall be built or repaired

within three years thereafter; but if the owner of such dam or mill or other machinery shall be an infant, or of unsound mind, or *femme covert*, or imprisoned at the time such dam or mill or other machinery shall be destroyed or materially impaired, then within three years after such disability is removed.''

This section was not copied into the judgment heretofore quoted, nor need it have been, for whatsoever the law will imply in a judgment (*State v. Grant*, 79 Mo. *loc. cit.* 122) or contract (*State ex rel. City v. Gas Co.*, 102 Mo. *loc. cit.* 485; Lawson, Con., sec. 33, subsec. c; *Whincup v. Hughes*, L. R. 6 C. P. 78; *Hudson Co. v. Pennsylvania Co.*, 8 Wall. 276), is as much part and parcel thereof as if inserted in terms therein. So that under the provisions of section 20 there was no absolute and unchangeable contract entered into between the State and the Clapps in regard to a fishway, because whatever rights they acquired were subject to, and conditioned upon, such orders as the court *in the future might* impose, and such future impositions might very well fall within the power of the legislature to direct the courts to impose.

But aside from any statute on the subject, the general rule of law is that where a person is granted authority to build a dam for mill purposes, he does it under an implied obligation to keep open sufficient fishways for the passage of fish; and this is always the case unless such implied obligation is excluded by an *express provision* exempting the dam-builder from such implied obligation. *Com. v. Essex. Co.*, 13 Gray, *loc. cit.* 248, and cases cited.

There is no such exemption from such liability to be found in this record. More than that, it can scarcely be said that the jury really passed upon the question as to whether "fish of passage" would be obstructed by the construction of the proposed dam, because the only

State v. Gilmore.

answer they returned to that question was this: "That no injury to fish of passage." Which answer was by no means responsive to the question propounded; for, though it might be true that no fish of passage would be *injured* by the erection of the dam, still, *non constat*, but that they might be·entirely "*obstructed*" by reason of the building of the dam; and if the jury did not pass upon that question, it would seem that the court could not do so; but it is unnecessary to rule the point whether they did or not, since it is certain the court did not, even if it could have done so expressly, nor by necessary implication, exempt the Clapps from the implied obligation to keep a fishway open.

Now, in reference to the claim made by defendant that his predecessor's estate had a contract which could not be impaired by subsequent legislation, it is sufficient to say that there can be no contract without a consideration, "so that the State can be supposed to have received a beneficial equivalent; for it is conceded on all sides that, if the exemption is made as a privilege only, it may be revoked at any time." Cooley, Const. Lim. [6 Ed.], 338, 148, and cases cited.

In the case at bar there was no consideration moving to the State upon which a contract could be founded; all the work done was done on the land of the then owners and for their·own benefit. In such case, as seen from the authorities cited, the act of the State confers a *mere privilege* which, as it exists *bene placitum*, may be revoked at the pleasure of the sovereign.

Having disposed of the cause on its merits, the only remaining point for discussion is the sufficiency of the indictment.

Section 7023 above cited requires that the owner of the dam "place and maintain thereon an apron or chute not less than fifteen feet wide, and sloping from each side to the center, so that the center shall be at

least six inches lower than either edge, and having an inclination of not more than forty-five degrees, and so situated that the main current of water, impeded in its natural flow by the dam, shall pass over the same." It is quite obvious that the insertion of the word "*not*" invalidates the indictment, because the requirement of the law is that the apron be "so situated" that the main current of water *would* pass over it, whereas, the indictment avers that the apron was "*not* so situated," etc., just the opposite of what the statute requires.

Taking these things into consideration, we hold the indictment insufficient, reverse the judgment and discharge the defendant.

All concur.