## ST. LOUIS SOUTHWESTERN RY. CO. v. BOARD OF DIRECTORS OF MILLER LEVEE DIST. NO. 2 et al.

(Circuit Court of Appeals, Eighth Circuit. August 2, 1913.)

No. 3,886.

1. EMINENT DOMAIN (§ 2*)—COMPENSATION—CONSTRUCTION OF LEVEE.

A state, under its general governmental power, has the right, directly or through the agency of levee districts created for the purpose, to build levees to protect land from overflow; and such structures create no liability for consequential damages caused thereby to private property by reason of any provision of the national Constitution.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 3–12; Dec. Dig. § 2.*]

2. LEVEES (§ 9*)—POWERS OF LEVEE DISTRICTS—REVIEW OF ACTION BY COURTS.

When the location and mode of construction of a levee is within the discretion of the board of directors of a levee district, to which it has been committed by the Legislature, their determination cannot be reviewed by the courts, unless an arbitrary and manifest abuse of the power is shown.

[Ed. Note.—For other cases, see Levees, Cent. Dig. § 18; Dec. Dig. § 9.*]

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit in equity by the St. Louis Southwestern Railway Company against the Board of Directors of Miller Levee District No. 2 and others. Decree for defendants (197 Fed. 815), and complainant appeals. Affirmed.

Edward A. Haid, of St. Louis, Mo., and T. J. Gaughan, of Camden, Ark. (S. H. West, of St. Louis, Mo., and J. T. Sifford, of Camden, Ark., on the brief), for appellant.

Henry Moore, Jr., of Texarkana, Ark., for appellees.

Before SANBORN and CARLAND, Circuit Judges, and WILLARD, District Judge.

WILLARD, District Judge. The railway company, a citizen of Missouri, which was the plaintiff below, brought this suit for the pur-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pose of enjoining the defendants, citizens of Arkansas, from constructing a levee on the Red river, in Miller county, Ark., which construction, it is alleged, would compel the plaintiff to rebuild its bridge across the river near the proposed levee, at an expense of over $150,000. The levee district is a corporation organized by special act of the Legislature in 1911. The court below sustained a demurrer to the amended bill, and, the plaintiff declining to plead further, it dismissed the bill. The amended bill alleged:

"That the defendant board of directors of Miller Levee District No. 2, is undertaking to build a levee of solid earth along the south and west side of Red river, beginning at a point in Miller county, Arkansas, where the state line between the states of Arkansas and Texas intersects the south bank of Red river, at or near Index, in the county of Miller and state of Arkansas, down along the southern and western bank of Red river to a point near the town of Garland City on the line of the plaintiff's road, and at or near said point to connect with the roadbed and cross the right of way of the plaintiff's railroad, and thence on southerly and easterly. That the purpose in view on the part of said board of directors of Miller Levee District in the construction of said levee, to confine the flood waters which are now and which have always heretofore been accustomed to flow down the Red river and the low lands adjoining its channel into the channel of said river north and easterly of said line of levee, and to prevent any of the waters accustomed heretofore to flow down said river and the low lands adjoining it from coming upon any of the lands embraced in said levee district, being those lands lying south and west of the said levee, and between it and what is known as the foothills, or high lands of Miller county adjoining said Red river bottom.

"The plaintiff alleges that said board of directors, with the purpose and intent aforesaid, has caused surveys to be made and the location of said levee to be fixed by engineers, and plans and specifications thereof to be drawn, and has or is about to arrange for the building of said levee by contract with a contractor or contractors, and is now engaged in negotiating for the sale of bonds in the sum of $300,000, or some like amount, in order to raise funds for the purpose of constructing said levee.

"The plaintiff further alleges: That in the spring of 1908 an overflow occurred in the Red river, the height of which was duly ascertained and marked, so that it is now well known. Said overflow was regarded, and is in fact, a fair example of the floods which may reasonably be expected to occur in said river. That the levee proposed to be constructed by the defendant district will be about five feet higher than the high water of the year 1908, and therefore higher than any known high water in said river.

"The plaintiff further alleges that a levee district has heretofore been created by a special act of the Legislature of the state of Arkansas on the opposite side of Red river, on what is known as the Lafayette county side, and a levee constructed of solid earth on an average of two feet higher than the high water of said river in the year 1908, above referred to. And, further, the plaintiff alleges that it is advised, and alleges as true, that the said levee district on the Lafayette county side intends to, and will in the near future, increase the height of said levee so that it will be of at least as great, if not greater, height than the levee proposed to be constructed by said defendant board of directors.

"The plaintiff further alleges that between said two embankments or levees not more than two-fifths of the flood water of Red river has heretofore been accustomed to pass, and that the effect of confining all of said water, the same being river water and accustomed to flow down the natural channel and natural drainage tributary thereto, in Red river will be to raise the water in the channel of said river to such a height as will overflow said levee in case of a flood similar or like the one of 1908, which said floods may reasonably be expected.

"The plaintiff further alleges: That more than 20 years ago, by special act of Congress, and under the authority and approval of the Secretary of War,.

it constructed a railroad bridge across said river near Garland City, and built a roadbed across the lowlands adjoining said river, leaving sufficient openings or trestle work to allow all flood water from said river which might reasonably be anticipated to pass free from obstruction through the same. * * * That the top of its pivot pier in its bridge across Red river is less than six inches above the high water of 1908, and the bottom chord of the draw of said bridge, which is the lowest part of the steel work of the bridge, is not more than high enough above that high-water mark to allow for the passage of drift. That by the construction of said levee the water of Red river will be raised during ordinary overflow more than two feet above the high-water mark of 1908; and should the Lafayette county levee be added to in height, as is now proposed by the Lafayette Levee District No. 1, then the water in Red river at said bridge will be raised at least five feet higher than the high-water mark of 1908, with the result that the water will be about five feet above the present height of the pivot pier, and will cause the logs and driftwood which always float down said river during overflows to lodge against the draw span of said bridge, and the pressure from said accumulated drift would in all probability cause said bridge to give way. * * *

"The plaintiff further states: That in the event said proposed levee should be constructed, and should the levee on the Lafayette county side be increased in height, so that the height of two said levees would be substantially the same, one or the other of said levees would necessarily in the time of high overflow give way, and that it would not be possible for the plaintiff to know which of said levees would give way, so that it would be necessary for it to provide, by additional openings on both the Miller county side and the Lafayette county side of the main channel of said river, to take care of the immense volume of water which would be discharged over and through the openings in the levee which should break and give way. That the expense necessary to provide for the additional openings required would be in excess of $100,-000. * * *

"The plaintiff further alleges: That the act creating said levee district does not prescribe the height to which the levee should be built, nor the distance from the bank of the river where the levee should be constructed. That the defendant board of directors have located said levee so near the bank of said river, and are intending to and will construct it of such height, that it will be of no benefit to the lands which were intended to be protected."

The amended bill also alleged that if the levee is constructed the company will be compelled to rebuild its bridge at a cost of over $150,-000, which the levee district cannot pay, owing to the limitation on the amount of taxes which it can raise. The amended bill further alleged that in the condemnation proceedings it was allowed $14 for that part of its right of way taken for the levee, and that it has appealed from that award.

[1] The directors of the district are proceeding to build the levee under direct legislative authority from the state of Arkansas. They constitute one of the agencies of the state. That the state under its general governmental power has the right to build levees to protect land from overflow cannot be doubted. Carson v. Levee District, 59 Ark. 513, 532, 27 S. W. 590; Cubbins v. Mississippi River Commission (D. C.) 204 Fed. 299, and cases there cited. The principal question is whether or not, if the state does that in this case, and the damages which plaintiff says it will suffer are not paid, any provision of the national or state Constitution will be violated. That such proceedings are not in violation of the Constitution of Arkansas is settled by the case of McCoy v. Board of Directors of Plum Bayou District, 95 Ark. 345, 129 S. W. 1097, 29 L. R. A. (N. S.) 396. The court

said there, at page 352 of 95 Ark., at page 1100 of 129 S. W. (29 L. R. A. [N. S.] 396):

"We conclude that, upon the state of facts which the jury could have found under the instructions of the court to exist, the defendant could rightfully construct the levee in the manner described without liability to plaintiff for damages. It is insisted, however, that a distinction should be made because of the provision of our Constitution that 'private property shall not be taken, appropriated or *damaged* for public use without just compensation therefor.' Article 2, par. 22, Constitution of 1874. In reaching the conclusion above announced, we are not unmindful of the constitutional provision; but, where no right has been violated, there is no injury for which the law affords compensation. It is a case of injury without damages. Lamb v. Reclamation District, 73 Cal. 125, 14 Pac. 625, 2 Am. St. Rep. 775."

That the acts done in this case do not constitute a "taking," within the meaning of the word as used in the fifth amendment to the Constitution of the United States, is settled by the cases of Jackson v. United States, 230 U. S. 1, 33 Sup. Ct. 1011, 57 L. Ed. 1363, and Hughes v. United States, 230 U. S. 24, 33 Sup. Ct. 1019, 57 L. Ed. 1374, decided on June 16, 1913, and since this case was argued. It was also held in those cases that if the United States, in the lawful exercise of its power to improve the navigation of the Mississippi river, caused damages, such as the plaintiff would suffer in this case, it was not liable therefor. In Jackson v. United States the court said:

"The third consideration—that is, the preventing of the outflow of water by work done in the tributaries, and the consequent increase in the volume of water in the river—cannot be tested from the point of view of individual authority, as the power to do so involves necessarily the exercise of governmental power. We therefore come to consider the proposition in that aspect. In doing so, however, it is to be observed that, even if all the previous considerations which we have stated, concerning the nonliability to result from building levees, measured by the right of an individual to build a levee to prevent the water of a river from overflowing its banks and destroying his property, be put out of view, and the case, therefore, in all its aspects be tested by the scope of the governmental authority possessed by the United States, the absence of merit in all the claims is too clear to require anything but statement. We say this because the plenary power of the United States to legislate for the benefit of navigation, and to construct such works as are appropriate to that end, without liability for remote or consequential damages, has been so often decided as to cause the subject not to be open. It was directly ruled as to work done by the Mississippi River Commission in Bedford v. United States, 192 U. S. 225, 24 Sup. Ct. 238, 48 L. Ed. 414, upon the authority of which case, as we have said, the court below placed its ruling, and as the underlying principles which controlled the decision in the Bedford Case, and which govern the subject, were again at this term, with much elaboration, stated and applied, we think it unnecessary to do more than refer to that ruling (United States v. Chandler-Dunbar Water Power Co., 229 U. S. 53, 33 Sup. Ct. 667, 57 L. Ed. 1063, decided May 26, 1913), and to direct that the judgment below be affirmed."

If the United States in the proper exercise of its governmental powers is not liable for consequential damages caused by such exercise, then a state cannot be made liable for such damages, when it is properly exercising its governmental powers, by reason of any provision of the national Constitution. That such consequential damages cannot be recovered has been frequently held. C., B. & Q. Ry. Co. v. Drainage Commissioners, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175; C., B. & Q. Ry. Co. v. Board of Supervisors,

Appanoose County, Iowa, 182 Fed. 291, 104 C. C. A. 573, 31 L. R. A. (N. S.) 1117 (8th Circuit).

[2] The plaintiff claims, however, that, even if a state has the right to divert the waters of a river without liability to those damaged thereby, the construction of the levee in the manner and to the height proposed would be so unreasonable and arbitrary as to demand injunctive relief of a court of equity, and it quotes from the case of C., B. & Q. Ry. Co. v. Drainage Commissioners, 200 U. S. 561, on page 593, 26 Sup. Ct. 341, on page 350 (50 L. Ed. 596, 4 Ann. Cas. 1175), the following:

"If the means employed have no real, substantial relation to public objects which government may legally accomplish, if they are arbitrary and unreasonable, beyond the necessities of the case, the judiciary will disregard mere forms, and interfere for the protection of rights injuriously affected by such illegal action."

The only allegation in the bill bearing upon this point is the following:

"That the defendant board of directors have located said levee so near the bank of said river and are intending to and will construct it of such height that it will be of no benefit to the lands which were intended to be protected."

This is entirely insufficient to bring the case within the principle announced. The public object which the state might legally accomplish was the prevention of the overflow. The means employed were the levee. In view of the millions of dollars spent on levees in the United States, it is idle to say that they have no real, substantial relation to the prevention of overflows. By the law here in question the height of the levee was left to the judgment of the board of directors, and so was the location thereof with reference to its proximity to the bank. There is no allegation in the bill that, in determining this height or this location, the directors acted in an arbitrary and unreasonable manner. There is no allegation that they did not employ competent engineers. If the Legislature had in the act itself located the line in the same place where the directors did locate it, and if it had in the act itself fixed the same height for the levee which the directors afterwards did (both of which things the Legislature had the undoubted right to do), it could not for a moment be contended that an allegation such as is found in the bill would require the court to enjoin the prosecution of the work thus ordered by the Legislature. Such an allegation would amount to nothing more than the opposition of the opinion of the railway company to the opinion of the Legislature. In Moore v. Board of Directors, 98 Ark. 113, at page 117, 135 S. W. 819, at page 821, the court said:

"It will be seen from this that the court held that only an arbitrary and manifest abuse of power by the Legislature would be reviewed, and not merely mistakes of judgment. To hold otherwise would be to take away from the lawmakers the powers committed to them and to substitute the judgment of the courts, requiring the latter to review every matter alleged to have been erroneously determined by the Legislature. It is only an arbitrary determination of the lawmakers, made without just and reasonable basis, that the courts should review. We said in Louisiana & Ark. Ry. Co. v. State, 85 Ark. 12, 106 S. W. 960: 'The legislative determination should be and is con-

clusive, unless it is arbitrary and without any foundation in justice and reason.' Nor can the courts review merely on general allegations that the assessments are 'arbitrary, excessive, and confiscatory.' Facts must be pleaded which show that the decision of the lawmakers was not merely erroneous, but that it was manifestly outside of the range of the facts, so as to amount to an arbitrary abuse of power; for nothing short of that will authorize a review by the courts."

In Salmon v. Board of Directors, 100 Ark. 366, at page 369, 140 S. W. 585, at page 586, the court said:

"Again, it is alleged in the answer, and it is now insisted, that the benefits to the land in question to be derived from the improvement will not be commensurate with the amount of assessments levied, and that the annual assessment should not have exceeded 4 per cent. of the valuation of the lands, which amount appellant tendered in court. The legislative branch of the government is, as we have said in several cases, the sole judge in the matter of creating improvement districts of this character, in establishing the boundaries thereof, and in determining, or in providing means for determining, the amount of assessments based on benefits, and the courts will not interfere unless an arbitrary and manifest abuse of the power is shown. Mere mistakes of the lawmakers, or of those empowered by the lawmakers to m.·ke assessments, in fixing the amount or rate of assessment, will not be reviewed and corrected by the courts. Moore v. Board of Directors Long Prairie Levee District, 98 Ark. 113, 135 S. W. 819; Board of Improvement v. Pollard, 98 Ark. 543, 136 S. W. 957."

The decree of the court below is affirmed.