David L. Max, Appellant, v. Barnard-Bolckow Drainage District.
—32 S. W. (2d) 583.

Division One, November 18, 1930.

724

*Peter C. Breit, Lloyd W. Booher* and *Warner Woolverton* for appellant.

*Grover C. Sparks* and *A. F. Harvey* for respondent.

FERGUSON, C.—This is an action for damages. Plaintiff's petition alleges that he is the owner of certain land in Andrew County, Missouri, through which the One Hundred and Two River flows; that he is the owner of a grist mill situated thereon and operated by water power derived from said river and made available by a dam lawfully erected and maintained across said river; that the defendant drainage district by its plan of reclamation proposed to straighten said river by digging and constructing certain ditches; that "dirt, earth and debris washed out of the ditches," so constructed, and was carried down the river into plaintiff's mill pond and forebay, which thereby became filled with earth and debris, so that the water in the mill pond, forebay and river below the dam has been reduced and diminished, rendering the water power machinery useless for the purposes for which it was constructed, and prays for damages in the sum of $10,000.

Defendant's answer was a general denial; that the reclamation plans were adopted and the ditches constructed and maintained by the drainage district acting in its governmental capacity, and that the dam used to run plaintiff's mill was an unlawful structure. At the conclusion of the testimony offered on the part of the plaintiff the court sustained defendant's motion for a directed verdict

and entered judgment for the defendant, from which the plaintiff appeals. The only error assigned is the action of the court in sustaining the plaintiff's demurrer to the evidence. The testimony is that the appellant owned and operated a small "grist" mill near the town of Rosendale in Andrew County, located on the bank of a small non-navigable stream known as the One Hundred and Two River. The said river flows in a southerly direction through a tract of land owned by appellant. The State of Missouri, by patent, conveyed the land to Benjamin Ogle in 1851, and the appellant, by mesne conveyances, derives title from the patentee. In the year 1845 Bethel Allen, as holder of the preemption certificate for said land, applied by petition to the Circuit Court of Andrew County pursuant to the provisions of the statute regulating such proceedings (R. S. Mo. 1845, Chap. 121, page 744) for permission to construct a dam in the One Hundred and Two River within the bounds of said land, said dam to be connected with a saw and grist mill and praying that a writ *ad quod damnum* be issued. The procedure prescribed by statute having been pursued, the circuit court at its September term, 1845, made the following order:

"Ezekiel W. Smith, Sheriff of Andrew County, returns into court the State's writ of *Ad quod Damnum* issued out of this court upon the petition of Bethel Allen filed at the last March term thereof, duly executed according to law, and also the report of the jury empannelled to assesses damages herein; and it appearing to the satisfaction of the court from an inspection of said report that the erection of a dam on the 102 River at the point mentioned in said petition to the altitude of ten ft., will injure no proprietor of any land on either side of said stram by reason of the inundation consequent upon the erection of said dam; nor that the mansion house, curtlege or garden thereunto belonging of any proprietor be overflowed thereby; nor that ordinary navigation or fish of passage will be to any injurious extent obstructed by the erection of said dam; nor that the health of the neighborhood will be annoyed thereby. It is therefore considered that the said Bethel Allen be and he is hereby permitted to erect said dam at the point to the height, and for the purposes mentioned, in his said petition."

Appellant asserts he is the successor in interest of the said Bethel Allen and has all the right and interest thus acquired by the said Bethel Allen. Pursuant to the permission or license granted, a mill dam and mill was constructed and for eighty years appellant and his grantors have maintained the dam and operated the grist mill and other machinery by water power at that site.

The defendant is a drainage district organized by the Circuit Court of Andrew County, Missouri, in accordance with and under the provisions of Article I, Chapter 28, Revised Statutes 1919, for the purpose of draining and reclaiming from overflow and the

"effects of water" for sanitary, agricultural and other purposes the lands embraced within such district and lying in the valley of the One Hundred and Two River, in the counties of Andrew and Nodaway. A part of the plan of reclamation was to straighten the channel of the One Hundred and Two River for a distance of several miles north and up stream, commencing at the south line of the district, which was about one mile north of plaintiff's dam and mill site. This was done by cutting off the bends in the river by ditches excavated twelve feet in width at the bottom with side slopes of one-half to one. The water of the stream was always restored to the original channel and no complaint is made by appellant as to that. Appellant's land, mill site and dam are outside the drainage district, and no ditches around the channel of the river were excavated nearer than a mile of the plaintiff's property. The drainage ditches were completed about the year 1922, and this action was filed in August, 1925. The dam was originally constructed of rocks and logs and has been repaired from time to time. In 1920 appellant put a concrete top over the log and rock construction. A steam engine was installed in the mill about 1890 and used for many years thereafter in generating power and at one time a gasoline engine was used in addition to the water power; however, at the time of the filing of this suit and for many years prior thereto appellant had operated the mill by water power alone. The testimony is that ditches constructed by defendant were enlarged and widened by erosion, and that mud, earth and debris was carried down to appellant's mill pond and forebay and into the river below the dam; that the mill pond has become filled with mud and silt to a greater extent than it was before respondent's ditches were constructed and does not hold a sufficient head of water, and that there is an accumulation of mud and silt below the dam and of sand and mud in the forebay since the construction of said ditches, resulting in a material reduction of the power available. One witness stated the power had been reduced from about thirty-five-horse power to eight-horse power "when the power is best."

The respondent drainage district was organized under Article I of Chapter 28, Revised Statutes 1919, by which the Legislature made provision for the organization and incorporation of such drainage districts by owners of "a majority of the acreage in any contiguous body of swamp, wet or overflowed lands or lands subject to overflow," for the purpose of reclaiming and protecting said lands "from the effects of water, for sanitary or agricultural purposes or when the same may be conducive to the public health, convenience or welfare or of public utility or benefit." Our courts have defined such drainage districts to be public corporations and governmental agencies exercising exclusively governmental functions. [State ex

rel. Caldwell v. Little River Drainage District, 291 Mo. 79, 236 S. W. 1. c. 15; Mound City Land & Stock Co. v. Miller, 170 Mo. 240, 70 S. W. 721; Morrison v. Morey, 146 Mo. 543, 48 S. W. 629; Squaw Creek Drainage District v. Turney, 235 Mo. 80, 138 S. W. 12; Anderson v. Inter-River Drainage District, 309 Mo. 181, 274 S. W. 448; Sigler v. Inter-River Drainage District, 311 Mo. 175, 279 S. W. 50; Sherwood v. Worth County Drainage District, 250 S. W. (Mo. Sup.) 605; State ex rel. Hausgen v. Allen et al., 298 Mo. 448, 250 S. W. 905.]

The authority of the Legislature to enact laws having for their object the drainage and reclamation of wet and overflowed lands for the purpose of promoting the public health and welfare and rendering the lands fit for habitation and use, is referable to the inherent police power of the State. [In re Little River Drainage District v. St. Louis, Memphis & Southeastern Railroad Co., 236 Mo. 94; Mound City Land & Stock Co. v. Miller, supra; Morrison v. Morey, supra; Anderson v. Inter-River Drainage District, supra.] We think it is so well settled by the foregoing authorities and the numerous cases cited therein that the State can create such a governmental agency through or by which it may legitimately exercise its police power for the promotion and protection of the public welfare and health that further citation of authorities is unnecessary.

Plaintiff's complaint in effect is that as a result or consequence of the construction of the ditches in said district by the State acting through its agent, the defendant drainage district, the flow, volume and pressure of the water in the stream at the dam has been so reduced, diminished and impaired that the power available for operating his mill is greatly reduced. Appellant bases his claim to a right to have and enjoy a natural flow and depth of water in the stream at the dam upon a permit granted to his predecessor in interest to erect said dam pursuant to legislative enactment relating to "Mills and Mill Dams" found in Revised Statutes 1845, Chapter 121. Appellant's position then is that having authorized and granted said permit and he and his predecessors having acted thereunder, the State could not, by its own subsequent acts, reduce the natural flow and depth of the water in the stream so as to impair the water power used to operate his mill without compensation by the State to him therefor.

There is no language in the Mill Dam Act under which appellant's predecessor in interest acquired a permit to build a dam, which provides that the grantee in such permit shall thereafter and always have the right to the use of the natural flow of water in the river; nor, can such right be inferred as a legal consequence from the language of the statute. All that was acquired by such permit was a license to build a dam subject to certain restrictions

and the right to use such water as in fact and from time to time should flow down to the dam. It cannot be supposed that the Legislature meant by the Mill Dam Act authorizing the circuit court to grant the permit upon compliance by an applicant with prescribed conditions, to warrant that for all future time no part of the stream should ever be used by the State for a public purpose without compensating the owner of the dam if the flow of the water was thereby impaired. The right so granted to construct a dam across a natural stream was not indefeasible, but was in legal effect subject at all times to the superior and paramount right of the State in the exercise of its police power for the protection of the public health and the promotion of the public welfare to use such stream for public purposes as in this instance, the drainage of wet and overflowed lands. [Water Power Co. v. Water Commissioners, 168 U. S. 349, and cases there cited; Tranbarger v. Railroad, 250 Mo. 46; State v. Gilmore, 141 Mo. 506; C. B. & Q. Ry. Co. v. Drainage Commissioners, 200 U. S. 561; Monongahela Navigation Co. v. Coons et al., 6 Watts and Sergeant (Pa.) 101.] Nor can such permit be construed as a contract to which the State is a party and which could not be impaired by any subsequent legislative or governmental act of the State. [State v. Gilmore, supra.] The defendant in the Gilmore case claimed that a permit or license granted in 1855 under the provisions of the Act relating to Mills and Mill Dams, which was substantially the same as the Act of 1845, was a contract which could not be impaired, and at page 513 the court says:

"In reference to the claim made by defendant that his predecessor's estate had a contract which could not be impaired by subsequent legislation, it is sufficient to say that there can be no contract without a consideration, 'so that the State can be supposed to have received a beneficial equivalent; for it is conceded on all sides that. if the exemption is made as a privilege only, it may be revoked at any time.' [Cooley, Const. Lim. (6 Ed.) 338, 148, and cases cited.]

"In the case at bar there was no consideration moving to the State upon which a contract could be founded; all the work done was done on the land of the then owners and for their own benefit. In such case, as seen from the authorities cited, the act of the State confers a *mere privilege* which, as it exists *bene placitum*, may be revoked at the pleasure of the sovereign."

Under the facts of this case it appears that no legal right has been invaded, violated or infringed, and the damages being without legal injury therefore come within the classification of *damnum absque injuria*.

This case is unlike that of the individual who, for his own benefit, makes an improvement on his own land, according to his own skill and diligence, not foreseeing that it will produce injury to his

neighbor, but damage to his neighbor's property results, for which, under the law, he is liable. The resemblance fails in this—that the act of the individual is not done for a public purpose, but for private emolument. Here the defendant, drainage district, is a governmental agency of the State, "an arm of the State," performing a public duty imposed by the Legislature and the improvements made are by authority of the State in the exercise of its police power for the benefit of the public health and welfare.

The respondent constructed the ditches in accordance with plans adopted pursuant to the authority given by the State and acting for the State as its governmental agency in that respect. In the construction of said drainage ditches the respondent did not encroach upon the lands or property of the appellant, and there was no actual and physical taking or damaging of plaintiff's property, or enforced occupation thereof or interference therewith, or the exercise of any proprietary functions in relation therto. Subsequent to the completion of the ditches, mud, earth and debris, which washed out of the ditches was carried down stream and deposited in appellant's mill pond, formed by the dam, and in the forebay and river below the dam. The damage alleged by appellant is plainly not the natural consequence of the construction of said ditches and such as could and ought to have been anticipated and expected as a result and it readily appears that the damage resulting is indirect, incidental and consequential.

Acts of a governmental agency in the proper exercise of the police power of the State which do not directly encroach upon private property or private rights, though their consequence may impair the use or enjoyment thereof, are held not to be a taking or damaging within the meaning of constitutional provisions relating to eminent domain and do not entitle the owner of such property to compensation from the State or its agent for such incidental or consequential damage. It is generally held that such damages do not come within the constitutional provision that private property shall not be taken for public use without just compensation, and this applies as well to the provision found in the Constitution of this State: "That private property shall not be taken *or damaged* for public use without just compensation." [Sec. 21, Art. II; Indian Creek Drainage District et al. v. Garrott (Miss.), 85 So. 312; Gray v. Reclamation District (Cal.), 163 Pac. 1024; Lamb v. Reclamation District, 73 Cal. 125; St. Louis Southwestern Ry. Co. v. Board of Directors of Levee District et al., 207 Fed. 338; Gibson v. United States, 166 U. S. 269; Monongahela Navigation Co. v. Coons et al., 6 Watts and Sergeant (Pa.) 101; C. B. & Q. Ry. Co. v. Drainage Commissioners, 200 U. S. 561; Transportation Co. v. Chicago, 99 U. S. 635; Jackson v. United States, 230 U. S. 1; State ex rel. Carter v. Harper, 182 Wis.

148; Anderson v. Drainage & Levee District, 309 Mo. 189; Sigler v. Inter-River Drainage District, 311 Mo. 175, and cases there cited and discussed.]

In St. Louis-Southeastern Ry. Co. v. Board of Directors of Levee District, supra, the plaintiff railroad company sought to enjoin the board of directors of a levee district, organized under a special act of the Legislature of the State of Arkansas, from constructing a levee, the construction of which, it was alleged, would compel plaintiff to rebuild a bridge across the river near the proposed levee at an expense of $150,000. The court held that in the construction of the levee the district was acting under direct legislative authority of the State of Arkansas and constituted a governmental agency of the State; that the State had a right to provide for the building of levees to protect land from overflow; that the damage which plaintiff alleged would result was wholly consequential, for which the levee district was not liable, and that neither the provisions of the Constitution of the United States nor the State of Arkansas were violated. The Arkansas Constitution provided that "private property shall not be taken, appropriated or damaged for public use without just compensation therefor."

In Indian Creek Drainage District et al. v. Garrott, supra, the drainage district had constructed a levee which obstructed the flow of vagrant flood waters which theretofore were wont to leave the channel of a river and spread over lands of an adjacent valley. It was alleged that the drainage district in protecting the land within the district by the levee against the flood waters caused lands outside the district to be inundated. It was held that the damage so resulting to lands outside the district was *damnum absque injuria.* The court had before it at the time a provision of the Constitution of the State of Mississippi, identical with Section 21, Article II, of our Constitution, and the court said that such provision "does not contemplate damages resulting without legal injury, as in the case at bar."

Gray v. Reclamation District, supra, involved a reclamation project carried out by the defendant reclamation district, which, it was alleged, caused plaintiff's lands to be flooded. It was held that the reclamation district, as an agent of the State, was engaged in an exercise of the police power of the State, and that the damages resulting are such as the owner of the land is not entitled to compensation for, being *damnum absque injuria.* The court said: "The addition of the word 'damaged' to our constitutional law governing the exercise of the right of eminent domain . . . did not, touching the exercise of the police power, give a right of action for damages which theretofore were *damnum absque injuria,*" and,

"Where similar questions have arisen in states containing the same constitutional provision as does our own, the courts have found no hesitation in declaring that the principle of *damnum absque injuria* has not been modified by the provision added to the constitutional law of eminent domain, touching the damaging of private property."

The case of Monongahela Navigation Co. v. Coons, supra, was an action against the Monongahela Navigation Company for damages. The defendant company acting under legislative authority constructed certain improvements in the Monongahela River in the aid of navigation which resulted in the obstruction of the flow of water in the Youghiogeny River to the injury of plaintiff's mill located thereon several miles from the confluence of the two rivers. Plaintiff's mill dam had been constructed under the provisions of a statute permitting the erection of mill dams on certain conditions therein set out, and it was urged that the privilege granted by that statute requiring as it did the expenditure of labor and money in permanent erections was founded on a contract which no subsequent act of the Legislature could impair, and that the State could not exempt its agent from liability for such consequential damages done to private property. It was held that the license to erect a dam was subordinated to the right of the commonwealth and that the defendant was not liable for the consequential damages resulting.

In Anderson v. Drainage & Levee District, supra, it was held that a drainage district was not liable in damages to owners of lands lying outside the drainage district for injury thereto caused by a levee erected by the drainage district to prevent flood waters from overflowing the lands within the district, though it resulted in increasing the overflow upon and over such outside lands. It was there held that the protection of swamp and low lands from overflow by a governmental agency such as a drainage district by the erection of levees was an exercise of the police power of the State and that damage thereby resulting to lands outside the district were not such damages as are contemplated by the provision of our Constitution relating to eminent domain, being *damnum absque injuria*; and the Sigler case is to the same effect.

Without further citation from the numerous authorities discussing this subject we follow the Anderson and Sigler cases in holding that the damages shown in this case are *damnum absque injuria* and are not such as come within the provisions of Section 21, Article II, of the Constitution of this State, and therefore the judgment of the circuit court must be affirmed. *Seddon* and *Ellison, CC.*, concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.